[No. 1546.]

OFFICE SPECIALTY MANUFACTURING COMPANY, A CORPORATION, APPELLANT, *v.* WASHOE COUNTY, RESPONDENT.

COUNTY COMMISSIONERS—POWERS SPECIAL AND LIMITED—NOTICE. Boards of county commissioners are created by law, and derive their authority solely from the statutes, and, in the exercise of their powers, are restricted to the method prescribed by law. Whoever deals with them, does so with full notice of the extent of their power, and the manner of its exercise.

PUBLIC PROPERTY—HOW DISPOSED OF—POWERS OF OFFICERS. Property acquired with public funds becomes public property, and no agent or officer of the public has any right to surrender the interests of the county in its property, or divest it of its rights therein, by gift or release, or in any manner except as prescribed by law.

COUNTY COMMISSIONERS— POWERS— CONTRACT— COUNTY'S OWNERSHIP IN PROPERTY UNDER FRAUDULENT SALE. Plaintiff delivered furniture to defendant county under a contract with the commissioners, which was void, because Gen. Stats. 1972, requiring advertisements for bids for all contracts over $500, was not complied with. Plaintiff was paid a portion of its claim for said furniture at the time of delivery, but the balance was subsequently disallowed. Under an arrangement with the commissioners, plaintiff then returned the amount received, and was authorized to remove its furniture, but did not do so. The board then advertised for bids for similar furniture, and plaintiff bid the amount of its claim, which, being the lowest, was accepted, and on the same day its bill for the amount was allowed by the board, but rejected by the auditor. The only furniture claimed to be delivered under the bid was that already in place under the void contract: *Held*, that the title to the property vested in the county upon its delivery under the void contract, and

that the board of commissioners had no power to surrender the property so acquired, and therefore plaintiff furnished nothing under its bid.

APPEAL from the District Court of the State of Nevada, Washoe county; *A. E. Cheney*, District Judge:

Action by the Office Specialty Manufacturing Company against Washoe county. From a judgment for defendant, and an order denying a new trial, plaintiff appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Torreyson & Summerfield*, for Appellant:

I.   It will be seen, from an examination of the record on appeal, that the district court holds that the contract entered into was illegal and fraudulent, and in violation of section 1972 of the General Statutes of Nevada. The court further holds that under this contract, although illegal and fraudulent as to this appellant, respondent nevertheless can take advantage of its own illegal and fraudulent acts; that respondent can keep and retain this property—use it, receive the benefit of the contract at the expense of the other contracting party—and then, in an action to recover the value of the property, set up the defense that the contract was illegal, and refuse to pay for the property.

II.   We do not believe that a party who has had the benefit of an agreement can be permitted, in an action founded upon it, to question its validity. The obligation to do justice rests upon all persons, natural and artificial, and if a municipality obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. The principle upon which this doctrine rests is that, if a municipality obtain the money or property of another by mistake or without authority of law, it is her duty to make restitution or compensation, not from any contract entered into by her on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial. (Beach on Corp. vol. 2, sec. 1138, p. 1473, note 3; Am. & Eng. Ency. of Law, vol. 15, p. 1083, n. 1, and cases cited; *Argenti* v. *San Francisco*, 16 Cal. 256, 282–3; *Nurberger* v. *Town Council*, 20 S. E. Rep. 14, 15;

*Methodist Church* v. *Mayor*, 50 Miss. 601, 605; *Marsh* v. *Fulton Co.*, 10 Wall. 676, 684; *Louisiana* v. *Wood*, 102 U. S. 294, 299; *Chapman* v. *County of Douglas*, 107 U. S. 348, 355–7; *Morville* v. *American Tract*, 123 Mass. 129, 137; *Clark* v. *County Commissioners*, 9 Neb. 516, 523–4; *Alleghany City* v. *McClurkan*, 14 Past. 81, 83; *Moore* v. *Mayor*, 73 N. Y. 238, 245, 246; Dillon on Municipal Corporations, vol. 1, sec. 459, note 460.)

III.   Having received benefits at the expense of the other contracting party, respondent cannot object that it was not empowered to perform what it promised in return in the mode in which it promised to perform.    (Travis, Law of Sales, vol. 1, pp. 434, 435 and n.; *Hitchcock* v. *Galveston*, 96 U. S. 341; *National Bank* v. *Matthews*, 98 U. S. 629; Sedgwick on Stats. and Const. Constr. p. 73; *Parish* v. *Wheeler*, 22 N. Y. 494, 506; Morawetz on Corp. vol. 2, sec. 712, notes.)

IV.   The commissioners had the power to purge the former contract of its illegality.    Although it is true that a contract made by a municipality in violation of an express legislative prohibition is void, yet, in the absence of special legislative restriction, the municipal authorities possess the same power as other debtors to make a new contract in any proper form purging the former contract of its illegality. (Dillon on Municipal Corp. vol. 1, sec. 448; *Little Rock* v. *Merchants National Bank*, 98 U. S. 308; *The Mayor* v. *Ray*, 19 Wall. 468; *Police Jury* v. *Briton*, 15 Wall. 570; *Mullarky* v. *Cedar Falls*, 19 Iowa, 24; *Sykes* v. *Laffery*, 27 Ark. 407; *Wright* v. *Hughes*, 13 Ind. 113, 114.)

V.   Respondent has alleged, upon its information and belief, in its answer, that the appellant unlawfully and fraudulently entered into this contract, but there is absolutely no proof upon the question.    On the contrary the record shows that both parties were endeavoring to comply with the law; that, after the court had decided the contract to be illegal, the commissioners, in good faith, proceeded to advertise for bids, and let the contract to the lowest responsible bidder.    In letting the first contract, the commissioners did not believe that they were violating the law.    They might have honestly been mistaken in the construction of the act of the legislature when they ordered cases numbers 1, 2, 3 and 4.

*T. V. Julien*, District Attorney, and *Thomas Wren*, for Respondent:

I.   The record discloses the fact that on May 22, 1896, appellant sold and delivered to the defendant, Washoe county, the identical metal furniture now in question, and accepted in payment $462 30.   By this transaction absolute title passed from appellant and became vested in the respondent, Washoe county, from that moment.

II.   Appellant had no more title or interest in that particular piece of furniture than it had in any property which belonged to the county.   The fact that, long subsequent to this transaction, appellant turned into the treasury of Washoe county the same amount of money it had previously received, can have no bearing in this case.   It was a voluntary and altogether fruitless proceeding on its part, which could not and did not in any way change the situation.   The county having acquired title to the property, it became the same as any other property owned by the county, and could not be disposed of in any other way than that prescribed by law. (Gen. Stats. 1949, s. 10; *Lyon Co.* v. *Ross*, 24 Nev. 102.)

III.   It follows that if the proceedings of January 3, 1898, could be purged of the fraudulent preceding transactions, and considered as entirely regular, still appellant must fail, for the substantial reason that it delivered no property in fulfillment of its agreement, the bald pretense in that direction being too apparent for cavil.

IV.   Neither the equitable rule invoked by counsel, nor the authorities cited in support thereof, are applicable in a case of this kind.   We believe the rule to be well settled that a party who knowingly enters into a contract with a municipal corporation, in disregard of statutory requirements, is not in a position to claim any equitable consideration by reason of its performance. (*Sutro* v. *Pettit*, 74 Cal. 337; *Santa Cruz Pav. Co.* v. *Brodrick*, 45 Pac. 863; *McDonald* v. *The Mayor*, 68 N. Y. 23.)

V.   In this case it is impossible to separate that which was done in violation of law from the fictitious attempts to comply with it.   Everything that has been done by the appellant, since the first adverse decision, has been simply a makeshift

and device to recover that which it risked and lost in an attempt to perpetrate a fraud upon the law.

VI.   If this court upholds appellant's contention, it relieves it from the just and equitable consequences of its wrong-doing; it proclaims to others that attempted raids upon the public treasury, in violation of express statutory provisions, may be made with impunity, with the assurance that all that you have lost directly may be recovered circuitously, and say to the transgressor:   "You have everything to gain and nothing to lose by your piratical adventure."   This, it is submitted, cannot be done, unless the wise and wholesome doctrine repeated and enforced in *Patterson* v. *Brown* (17 Nev. 172) is to be completely overthrown.

VII.   The court will not fail to observe that the advertise-ment was for bids to construct and deliver a duplicate of certain property then in the possession of the defendant; that, upon the very day the bid of appellant was opened and accepted by the commissioners, the bill of appellant against Washoe county, for the identical sum named in the bid, was presented to and allowed by the commissioners and ordered paid.   The case then, fairly stated, irrespective of the fraud-ulent nature of the transaction in which it had its inception, is simply an action for the value of personal property alleged to have been sold and delivered under an accepted bid, when the undisputed proofs show that there was neither a sale nor a delivery of any property.

By the Court, BONNIFIELD, J.:

This action was brought by the plaintiff to recover the sum of $1,498, alleged to be due it from the defendant for certain metallic furniture, which it is alleged the plaintiff sold and delivered to the defendant.   The case was tried by the dis-trict court sitting without a jury.   Judgment was given for the defendant for its costs of suit.   This appeal is taken from the judgment and order denying plaintiff's motion for new trial.

Section 1972 of the General Statutes provides:   "In letting all contracts of any and every kind, character and descrip-tion whatever, where the contract in the aggregate amounts to five hundred dollars or more, the county commissioners

shall advertise such contract or contracts to be let, stating the nature and character thereof—and when plans and specifications are to constitute part of such contract it shall be stated in the notice where the same may be seen—in some newspaper," etc. "All such contracts shall be let to the lowest responsible bidder."

It appears that the defendant, acting by and through its board of county commissioners, made and entered into a written contract with the plaintiff for the purchase of certain metallic furniture, to wit:

"Agreement made this 17th day of February, A. D. 1896, by and between Office Specialty Mfg. Co. of Rochester, N. Y., and San Francisco, party of the first part, and Washoe county, Nevada, by its county commissioners, party of the second part: Witnesseth, that said party of the first part, for the consideration hereinafter mentioned, agrees with said party of the second part to furnish, on or before June 1, 1896, the several articles described in the annexed schedule, as per drawings and specifications submitted, which are hereby made a part of this contract. In consideration of which said party of the second part agrees with said party of the first part to pay, upon receipt and examination of said goods, at the least, within thirty days from receipt of goods, the sum of four hundred and sixty-two $\frac{30}{100}$ dollars ($462 30) in good and lawful money of the United States. [Duly signed by the parties.]

"SCHEDULE.

"65 document files, 12 roller book shelves, 54 legal blank drawers, locks on 65 files.

"And the Office Specialty Mfg. Co. further agrees, if desired, to furnish balance of metallic furniture in county clerk's office at the same rate of price as above scheduled and filed. [Duly signed by said plaintiff.]"

At the time of the execution of the above contract, the plaintiff filed with the board of county commissioners a schedule of the balance of the metallic furniture agreed to be furnished by the plaintiff as provided in the last paragraph of the contract above set out. In said schedule the metallic furniture so agreed to be furnished by plaintiff was separated into four lots or cases, and designated, respectively,

case 1, case 2, case 3, and case 4.  Case 1 was described as containing said 65 document files, etc., as above given, and cases 2, 3, and 4 were described in the schedule as containing certain items of furniture, respectively, with the price of each case, to wit:  Case No. 2, $397 40; case No. 3, $366 60; and case No. 4, $272 30.  The total price of the four cases was $1,498 60.

On the 6th day of April, the 4th day of May, and the 18th day of May, 1896, said commissioners ordered from the plaintiff said cases Nos. 2, 3, and 4, respectively.  On the 25th day of May, 1896, the plaintiff, under and by virtue of said contract, delivered to defendant the metallic furniture specified in said contract, and the said schedule annexed thereto, and the drawings and specifications submitted and filed therewith, to wit, said four cases of metallic furniture, which were manufactured in one solid framework, which is indivisible without irreparable injury to the whole thereof, and the county commissioners accepted the same.

On the 25th day of May, 1896, the plaintiff presented its bill to said board of commissioners for case No. 1, in the sum of $462 30, which was allowed and paid.  On the said last-named day the plaintiff presented its bill to said board for said cases Nos. 2, 3, and 4, in the respective sums of $397 40, $366 60, and $272 30.  These bills were allowed by the board, vetoed by the county auditor, and again allowed by the unanimous vote of the board, notwithstanding the veto.  The auditor still refused to draw warrants for the same.

Other facts appear in the written decision of the trial court, which decision, in the main, we give below, and adopt it as the opinion of this court on this appeal, to wit:

"In May, 1896, the plaintiff sold and delivered to the defendant certain metallic furniture for the county clerk's office, under a contract which has twice been adjudged fraudulent and void, in part payment of which it then received $462 30.  Upon the plainest principles of the law, this sale and delivery, being unconditional, vested the title and ownership of the property in the county of Washoe.  That the plaintiff has not heretofore received the balance of the agreed price, which was $1,498 60, is solely due to its own fraudulent contract.

"In September, 1897, the board of commissioners of the defendant received from the plaintiff the amount which it had been paid on said contract, the money being turned into the general fund of the county, where it now remains, and directed the plaintiff to remove the furniture from the clerk's office, where it was then in use. But it was not removed or disturbed, and ever since has been, and still is, in the custody and control of the county clerk, and in the possession of the defendant. Pursuant to an advertisement for bids for metallic files and furniture, identically the same as that already owned and possessed by the county, bids were received by the board of commissioners, and opened on January 3, 1898, and the bid of the plaintiff, for $1,498, being the lowest, was at once accepted; and at the same meeting the plaintiff's bill for that amount, in payment of furniture furnished under its said bid, was presented to and allowed by the board. This claim, when presented to the auditor, was duly rejected, and again came before the board for action on February 7, 1898. At this meeting the board caused to be spread upon its records a statement to the effect that under the said bid a contract to furnish the furniture mentioned had been let to the plaintiff, and that the plaintiff had fully completed it, to the satisfaction of the board, and that the board had accepted the furniture. Thereupon the plaintiff was permitted to file and attach to the original bill its amended bill, which was allowed at the same meeting, and ordered to be returned to the auditor, without action on the auditor's veto of the original bill. The bill, as amended, was rejected by the auditor. These proceedings having the support of only a majority of the board, Commissioner Beck constantly opposing them, the claim could not be carried over the veto, and was rejected, and this action commenced to recover the sum of $1,498, the amount of said bid.

"It is admitted that the plaintiff has furnished no property under its said bid other than the property which it sold and delivered to the plaintiff under its void contract in 1896. There is no substantial controversy about the facts of this case, and they suggest a great many important and interesting legal questions. It may well be doubted if a board of commissioners have any power to reconsider its own or a

former board's action in any form, or consider or allow a claim for materials furnished more than six months before the claim is filed, when no stated time of payment is agreed upon.    But it is not thought necessary or advisable to rest this decision on any narrow grounds.    By the sale and delivery in 1896 the plaintiff voluntarily parted with all its right, title, and interest in this property, and the defendant became fully vested with the title and possession.    It therefore is material to inquire if the county has ever been devested of its title and ownership of this property, for, if it has not, the plaintiff has not complied with its bid, and is seeking to recover pay for property which it neither owned nor possessed.

"It should ever be remembered that boards of county commissioners are created by law, derive their authority solely from the statutes, and in the exercise of their powers are restricted to the method prescribed by law.    Whoever deals with them does so with full notice of the extent of their power, and the manner in which it can alone be executed. What such boards may do, and how they must proceed, is for the legislature—the lawmaking agency of the people—to determine.    That decision is final until repealed or modified by the same power that enacted it.    It cannot be extended or ignored by any action of the boards or the courts.    Whoever deals with the agents of a county does so with ample means of ascertaining what they may do, and how they must proceed, with full knowledge that, if they depart therefrom, he contracts at his peril.    Whoever, thus forewarned, becomes entangled in the meshes of his own fraudulent scheming, should uncomplainingly abide the outcome of his enterprise, however disastrous the result.    Boards of county commissioners are not the county, or the owners of its property. They are public agencies, created by law, charged with certain public duties, limited in extent, and restricted in method. The protection of the public is only had by a faithful observance of every limitation and restriction.    They are the only safeguard against the repetition of many disastrous public experiences.    They can neither be boldly disregarded nor overthrown by circumlocution.    They are the law, wisely enacted for the public good, and in their administration the purpose for which they were created must not be forgotten.

"Property acquired with public funds becomes public property, and no agent or officer of the public has any more right to surrender the interests of the county in its property, or devest it of its rights therein, by gift or release, than he has to give away the public funds. The manner of acquiring property is established by law. It is no less essential that there should be legislative authority for its disposition. It lies in the nature of things that public officers, charged with the official duty of preserving and protecting public property, can have no implied authority by gift, release or sale to surrender and destroy the very property and rights which they are elected to foster and preserve. Any other rule would place the interests of the public at the mercy of its sworn agents, with no limitation except personal honor, no restraint except public sentiment. Experience has demonstrated that these are insufficient. Although these principles are ancient, inherent in our form of government, and have been many, many times declared by the courts, new and varied instances of attempts to avoid them, or to be released from the consequences of trying to defeat their beneficent ends, are constantly occurring. This action is new, not in specie, but in variety.

"The later proceedings have their root and foundation in the fraudulent contract which preceded them. They are tainted with the same infirmity. They are a palpable attempt on the part of public officers to relieve a party, who has deliberately attempted to secure public funds by a fraudulent contract, from the just consequences of his unlawful venture, by clothing its further proceedings with the semblance of regularity. It is as true to-day as when anciently written, 'fraud is not purged by circuity.' 'A fraud upon a statute is a violation of the statute.' Public officers should not, and courts will not, lend their aid, in any form, to assist a party to recover what he has lost in such a transaction. On the contrary, it is the avowed purpose of the courts to make the consequences of such fraudulent scheming most perilous, to the end that others may be deterred from similar ventures, and that it may appear that it is true in law as well as in morals that 'honesty is the best policy.' The proceedings by which the board of commissioners allowed the plaintiff to

refund an amount of money equal to what it had been paid by the county, and then go through the form of advertising for bids for identically the same furniture as the county then owned and possessed, and the recitals of its record that a contract had been made and fully performed, and the same accepted, and the allowed amendment and reconsideration of the plaintiff's bill, all manifest an unworthy prostitution of official powers for the sole purpose of assisting the plaintiff to recover all it had jeopardized by its fraudulent enterprise.

"There is no pretense that the county needed or intended to procure any other furniture than what it then had and owned. The bid of the plaintiff indicates an intention to sell and deliver, under its bid, the very article which it had sold and delivered in 1896. The allowance of plaintiff's bill the same day its bid was opened, although the furniture is large and heavy, and requires considerable labor to adjust and put in place, reveals the true nature and object of the transaction. To sustain plaintiff's cause of action, it is necessary to hold that plaintiff has sold and delivered to defendant what the defendant solicited bids for, and what the plaintiff offered to sell by its bid. Since plaintiff's bid, it has parted with no property or interest. It has not delivered a duplicate of what the county had when it requested bids, as mentioned in the advertisement. It has simply pretended to sell and deliver to the county that which the county already owned and possessed. The title to this property which the county acquired by sale and delivery and partial payment in 1896 has never been devested. There was nothing in that sale and delivery which made, or purported to make, the passing of the complete title to the county in any way dependent on full payment.

"As stated before—and it cannot be too often repeated—the reason that the plaintiff has not long since received full payment is solely and entirely due to its own unlawful and fraudulent contract. It has itself, and none other, to blame. It should have known that the board of county commissioners could not give away county property, or release or surrender the rights of the county. If there is personal property of the county which it is advisable to sell, the law points out

the course to be pursued. It is by public sale, after due notice. Unless the statute referred to on the argument applies to personal as well as real property, there is no power in the board to sell any personal property. None is given except by that section. If none is given, none exists. In either view, the board did not devest the county's title to the property by sale as provided by law, and it is powerless to do so otherwise. It therefore follows that the plaintiff did not sell or deliver to defendant any property or valuable thing under its bid, and that its claim and demand for $1,498 is entirely without consideration, and is unlawful and void."

The judgment and order of the trial court from which this appeal is taken are affirmed.