HAROLD V. DUNN, Jr., LEROY PHOENIX and HARRY JOSEPH GARDNER, Appellants, v. CITY OF CARSON CITY, Respondent.

No. 6605

July 26, 1972                         499 P.2d 653

*Theodore H. Stokes* and *F. Thomas Eck, III,* of Carson City, for Appellants.

*Michael E. Fondi,* District Attorney, of Carson City, for Respondent.

## OPINION

By the Court, ZENOFF, C. J.:

Appellants, former Carson City police officers, appeal from an order dismissing an action brought to obtain payment in money for overtime work. The ordinance under which they submitted claims to the city after leaving its employ, and on which their action is based, provides:

"It is the declared policy of the city that overtime work is to be discouraged. However, when overtime work is performed by an employee, such overtime shall be compensated for by allowing commensurate time off within thirty calendar days following the performance of such overtime work. If in any case it is impracticable to compensate for overtime work by giving the employee commensurate time off, the employee

performing such overtime may be compensated for such overtime at the current pay rate of the employee concerned. However, payment for overtime work must first be approved by the city council." Carson City Mun. Code § 2.04.330 (1966).

The sole question before us is whether appellants' complaint states cognizable causes of action. We hold it does.[1]

At least one court has held that a public employee has the right to recover for uncompensated overtime work, even in the absence of a law, ordinance or rule establishing that right. Grossman v. City of New York, 316 N.Y.S.2d 542 (N.Y. City Ct. 1970). While there may be much to say for such a view, we need not now adopt it. Here, an ordinance expressly declares that "when overtime work is performed by an employee, such overtime shall be compensated for by allowing commensurate time off within thirty calendar days following the performance of such overtime work."

It is immaterial that this declaration is preceded by the words: "It is the declared policy of the city that overtime work is to be discouraged." Clearly, this statement of policy was intended to guide appellants' superiors, and not to limit appellants' right to compensation if, in fact, their superiors have not "discouraged" overtime work but instead have sanctioned it. Certainly no one will say appellants should, or could, "discourage" themselves from working overtime. Nor can this court implement the city's policy of "discouraging" overtime by denying appellants' rights. Indeed, for us to deny appellants relief would encourage supervisors to exact overtime work without compensation, which is precisely what the ordinance seeks to avoid.

It is equally immaterial that appellants' superiors may have omitted to allow compensatory time off within thirty calendar days following the performance of overtime work, as the ordinance contemplates. Again, such directive was not to appellants, who were powerless to comply with it, but to their superiors, who were the only persons who could implement its

---

[1] Appellant Dunn alleges that while employed from April, 1961, through July, 1969, he performed 1050 hours of overtime work for which he has not yet been compensated either with commensurate time off or at his "current pay rate." Appellant Phoenix alleges 371 hours of uncompensated overtime between October, 1964, and October 11, 1969. Appellant Gardner alleges 789 hours of uncompensated overtime between August, 1964, and July 23, 1969.

terms. If appellants have earned the right to compensation, that right is not defeated because their superiors failed to see that compensation was provided promptly, or because appellants' superiors may have failed to advise appellants of their right to compensation, or because their superiors may have intended that appellants never be compensated at all. "The City, as an employer, should be in no more favored position than a private employer in its dealing with its employees. Certainly, a private employer should not be permitted . . . to deprive an employee of that which he has earned and the City should be held to at least the same standard, if not a higher one." Vaccaro v. Board of Education of City of New York, 282 N.Y.S.2d 881, 887 (N.Y. City Ct. 1967). However, we note, without deciding the question, that an affirmative defense of waiver may be available to the respondent city as to some or all of appellants' claims, if it can show appellants refused to accept commensurate time off with knowledge of their rights. Cf. Pohle v. Christian, 130 P.2d 417 (Cal. 1942).

Finally, it is immaterial that the ordinance recites: "However, payment for overtime work must first be approved by the city council." If this provision be construed as we understand respondent to suggest it may be, to require advance council approval before overtime work is allowed, then again we would consider its directive as one to appellants' superiors rather than to appellants themselves. The ordinance does not contemplate that public employees such as police officers shall refuse to perform work desired by their superiors, until proof is produced that the city council has met and approved payment therefor. In any event, to us the provision in question seems merely to contemplate that when cash compensation for work performed is sought, claims must be presented to the city council. Appellants' complaint alleges that this was done.

Briefly then, by any fair reading, the ordinance intends that if an employee's superiors do not "discourage" overtime work, but instead sanction its performance, the employee *shall* be compensated, by commensurate time off if his superiors deem this practicable; or alternatively, if his superiors deem commensurate time off impracticable, then they *may* have him compensated "at the current pay rate of the employee concerned." An employee's superiors have discretion only as to how, and not whether, he is to be compensated for overtime work. The employee is to be compensated, one way or the

other. The last sentence of the ordinance cannot fairly be construed as allowing respondent city the third option it now contends for, which is not to compensate its employees at all. To place the latter construction on the ordinance would render it entirely meaningless.

Thus, we arrive at the only significant issue in this case, to wit: whether appellants, who have resigned their employment with respondent, are now entitled to insist on payment in cash for overtime work heretofore performed and not yet compensated by commensurate time off. We believe they are.

Whether an employee remains technically an employee but receives time off with pay, or quits and then seeks the same monetary compensation, should not affect respondent's obligation. Such a situation can develop only if respondent fails to allow either commensurate time off, or payment in cash, as its ordinance contemplates. For all we know, appellants may have resigned because such conditions of their employment were not being met. Furthermore, appellants had no effective means by which to compel their superiors to give them time off at any specific time, or at all. Thus, only if overtime work remained uncompensated upon appellants' separation from service did their right to demand payment in cash become fixed, and the statute of limitations commence to run. Adams v. City of Modesto, 350 P.2d 529, 534–535 (Cal. 1960); Martin v. Henderson, 255 P.2d 416, 422 (Cal. 1953); Howard v. Lampton, 197 P.2d 69, 73 (Cal.App. 1948). See also: Grossman v. City of New York, and Vaccaro v. Board of Education of City of New York, supra.

Appellants are therefore entitled to attempt to prove, as their complaint alleges, that they have performed overtime work for which they have not received payment or commensurate time off. The burden of course is on appellants to establish these facts, essential to their cause of action.

Reversed and remanded.

BATJER, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.