ROBERT E. MULLEN, Appellant, v. CLARK COUNTY, a Political Subdivision of the State of Nevada; ROBERT T. BASKIN, WILLIAM H. BRIARE, DARWIN W. LAMB, LOU F. LA PORTA, JAMES G. RYAN, JAMES BRENNAN and ROBERT BROADBENT, Individually and as Clark County Commissioners, Respondents.

No. 6880

July 10, 1973                                   511 P.2d 1036

[Rehearing denied August 23, 1973]

*Harry J. Mangrum, Jr.,* of Las Vegas, for Appellant.

*Roy A. Woofter,* District Attorney, and *George F. Ogilvie, Jr.,* Chief Civil Deputy District Attorney, Clark County, for Respondents.

## OPINION

By the Court, ZENOFF, J.:

Appellant was employed by respondent Clark County on April 21, 1961 as a Deputy Probation Officer. On November 18, 1963 he was promoted to Chief Probation Officer and on

June 4, 1964 to Director of Juvenile Court Services, which position he held until March 4, 1968. On that date he was incapacitated by a massive cerebral stroke. While he was recuperating Mullen was replaced as Director of Juvenile Court Services and he filed ten claims against the county for back overtime. These claims, however, were not acted upon and this suit followed.

Appellant moved for summary judgment, or alternatively, for partial summary judgment on the issue of liability. Shortly thereafter respondents moved for "summary judgment" on the ground that the complaint "fails to state any cause of action upon which relief can be granted." The trial court, after considering both motions and the accompanying affidavits, interrogatories and points and authorities, found inter alia that during the entire period of his employment with respondent Clark County, appellant was a "classified" employee, and that during such time it was his "custom and practice each week to . work a tremendous number of hours in excess of the 'normal' work week. . . . A portion of the overtime work was on the direction of his supervisor and occasionally upon the direction of individual county commissioners. At all times it was known by his immediate supervisor that he was constantly working overtime." Nevertheless, the trial court held that as a matter of law he was not entitled to compensation for his overtime. Accordingly, an order was entered denying appellant's motion and granting that of respondent.

On appeal, this court is faced with the question whether appellant is precluded by law from recovering compensation for his overtime.

1. Respondents urge this court to view appellant as having been an "officer" rather than an "employee" of respondent Clark County and cite NRS 281.100 for the proposition that "officers" may not recover compensation for their overtime. That statute in fact approves overtime pay as an alternative to compensatory vacation time as compensation for overtime hours worked by employees to meet certain emergency situations.

Mullen was not an official of the county within the contemplation of NRS 281.100. The term "officials" used in NRS 281.100 should be construed to mean a "public officer" as those words are used in NRS 281.005(1). A public officer is there defined as a person elected or appointed to a position which (a) is established by the constitution or a statute of

this state or by a charter or ordinance of a political subdivision of this state; and (b) involves the continuous exercise, as part of the regular and permanent administration of the government, of a public power, trust or duty. This definition of a public officer was introduced into the Act in 1967 (see, 67 Stats. 1471) and became effective January 1, 1968. Of course, Mullen's claim for overtime compensation runs from April 21, 1961 to September 12, 1968. In any event, it seems that the statutory definition of a public officer is in harmony with case law previously decided and contemplates that the individual in question is invested with some portion of the sovereign functions of government. See, State ex rel. Kendall v. Cole, 38 Nev. 215, 219, 148 P. 551 (1915); State ex rel. Mathews v. Murray, 70 Nev. 116, 258 P.2d 982 (1953).

It is true, of course, that the Director of Juvenile Court Services, the position which Mullen finally held, is created by statute. However, it is also true that his duties were not defined by statute but rather by his superiors; that no tenure attached to his position; that he had no power to hire or fire; and that he was wholly subordinate and responsible to his superiors. In these circumstances the functions of sovereignty reposed in his superiors to whom they had been assigned by law and were not attributable to the several positions which Mullen enjoyed. The only distinction between State ex rel. Mathews v. Murray, supra, and the case before us is that in *Murray* the statute did not create the position of director of the drivers license division whereas in this case a statute did create the several positions which Mr. Mullen held. This difference, however, seems insignificant since the responsibility of the juvenile court truly rests in the judges of the court.

If certain public "officers" or "employees" or the holders of certain positions, regardless of how they might be classified, are to be barred from recovery of compensation for their overtime, this must be done by affirmative action of the legislative bodies of the state or its political subdivisions. This court will not usurp such a legislative function.

2. Lastly, respondents cite Clark County Ordinance No. 194, § 15, in support of their contention that appellant is precluded by law from recovery for his overtime. That ordinance provides as follows:

> "Overtime. It is the policy of the County that overtime work is to be discouraged. If, in the judgment of the department supervisor work beyond the

established work week is required, he shall report the circumstances to the Board of County Commissioners and he shall not obligate the County to make compensation for such overtime in any form or manner except on the specific advance authorization of the Board of County Commissioners; provided that, in case of emergency to prevent loss of life or damage to property, the department supervisor may authorize such overtime pending the earliest opportunity to seek the approval of the Board. When overtime is authorized it may be compensated for in equivalent time off, with mutual agreement of the employee and the department supervisor; or in cash, at the employees established rate of pay, in the discretion of the department supervisor."

A very similar ordinance was considered recently by the court in Dunn v. City of Carson City, 88 Nev. 451, 499 P.2d 653 (1972).[1] Following the rationale of the *Dunn* decision, we hold that the statement in Clark County Ordinance No. 194, § 15, that "overtime work is to be discouraged" and the requirement that advance approval be secured by one's supervisor from the Board of County Commissioners, does not curtail appellant's right to compensation for work already performed under the knowledge and sanction and at the encouragement of his superior and occasionally upon the express direction of individual county commissioners.

In summary, appellant is not precluded by statute, ordinance or Nevada case law from recovering compensation for his overtime. We therefore reverse the judgment of the lower court.

Since this matter arose from cross motions for summary judgment we could, under the rationale of City of Las Vegas v. Cragin Industries, 86 Nev. 933, 478 P.2d 585 (1970), merely remand the case to the trial court with instruction to enter judgment in appellant's favor for the total amount sought. Such action, however, would be inappropriate in this case. Here, the parties by their motions did not concede that there was no genuine issue as to any material fact. Respondents' motion for "summary judgment" made no such recital. It is made upon the sole ground of failure to state a claim upon

---

[1]The case of Dunn v. Carson City cited above was decided by this court shortly after the trial court rendered this decision.

which relief can be granted, and is in effect a motion to dismiss. Appellant's motion was for summary judgment or in the alternative, partial summary judgment on the issue of liability. NRCP 56(c) provides that "[s]ummary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." We do not view the parties as having conceded, by filing the cross motions, that there remain no genuine issues as to any material facts. Accordingly, although appellant is entitled to summary judgment on the issue of liability, we remand the case for further trial on the issue of overtime compensation claimed to be due.

Reversed and remanded for further proceedings.

THOMPSON, C. J., and BATJER, J., concur.

McDANIEL, D. J., with whom MOWBRAY, J., agrees, dissenting:

Respectfully, I dissent.

Appellant Robert E. Mullen was appointed to the position of Deputy Juvenile Probation Officer for Clark County on April 21, 1961. At that time, he knew or should have known that in order to properly carry out the duties of that position he would not be limited to regular office hours but that he would be on call after hours, 7 days a week. The delinquent children over whom he was to have supervision do not confine their activities to any 9 a.m. to 5 p.m. schedule. He was advanced to Assistant Chief Probation Officer on July 15, 1963; to Chief Probation Officer on November 18, 1963; and then to Director of Juvenile Court Services of Clark County on June 4, 1964. He held the latter position until May 4, 1968, when he was stricken with a cerebral stroke. He was paid in full for his accrued sick leave and vacation time. At his request, the County Commissioners of Clark County granted to him an additional 90 days of sick leave and also, in recognition of the fact that he had, on many occasions, worked more than the regular working hours, pay for an additional 480 hours.

On July 1, 1968, Mr. Mullen filed his claim for 6,114 hours of unpaid back overtime covering the period from September 19, 1963, to March 4, 1968, seeking additional compensation in the sum of $40,192.21 over and above his regular salary and other monies previously received. He appeared before the County Commissioners of Clark County on July 8, 1968, in support of his claim. The district attorney recommended that

the claim be denied as being untimely filed except as to the last 6 months. No action was taken by the Board of County Commissioners.

On September 1, 1968, Mr. Mullen returned to work as an Assistant Chief Probation Officer. He voluntarily terminated said employment on September 12, 1968. He then filed suit on December 31, 1968.

In July 1971, appellant filed his motion for summary judgment. Respondent filed a cross motion for summary judgment. On January 10, 1972, the court granted the motion of respondent Clark County, and judgment was entered in favor of the county on January 14, 1972.

The trial court found that appellant's alleged cause of action for overtime accrued as of the date of his termination of employment. Dunn v. City of Carson City, 88 Nev. 451, 499 P.2d 653 (1972), citing Adams v. City of Modesto, 350 P.2d 529 (Cal. 1960). Respondent asserts that the reason Mr. Mullen was not paid for overtime in the past and cannot now be paid for his overtime is that he was a "public officer" and not a "public employee," and that under the laws of the State of Nevada [NRS 281.100, subsection 3(a)], a public officer is prohibited from receiving overtime pay. That statute recognizes the law as set forth in State ex rel. Norcross v. Shearer, 23 Nev. 76 at 82–83, 42 P. 582 (1895), wherein this court quoted with approval the following statement from 1 J. Dillon, Commentary on the Law of Municipal Corporations §§ 233, 234 (3d ed. 1890):

" 'It is a well-settled rule that a person accepting a public office, with a *fixed* salary, is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of his duties, even though the salary may be inadequate remuneration for the service. Nor does it alter the case that by subsequent statutes or ordinances his duties within the scope of the charter power pertaining to his office . . . are increased[,] and not his salary. Whenever he considers the compensation inadequate, he is at liberty to resign. The rule is of importance to the public. To allow changes and additions in the duties, properly belonging, or which may properly be attached to an office to lay the foundation for extra compensation would introduce intolerable mischief. The rule, too, should be rigidly enforced. The statutes of the legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularity the duties annexed to public offices; and it requires but little

ingenuity to run nice distinctions between what duties may[,] and what may not, be considered strictly official; and if these distinctions are much favored by courts of justice it may lead to great abuse. Not only has an officer under such circum- .stances no legal claim for extra compensation, but a promise to pay him an extra fee or sum beyond that fixed by law is not binding, though he renders services and exercises a degree of diligence greater than could legally have been required of him.' . . ." (Emphasis added.)

The courts of the United States have been confronted with the distinction between an officer and an employee on many occasions. The numerous definitions are as confusing as the problem sought to be solved. Nevada now has a statute, NRS 281.005, subsection 1, attempting to define a "public officer." This statute was not passed until 1967. The statute is, however, a codification of the case law as stated in State ex rel. Kendall v. Cole, 38 Nev. 215, 148 P. 551 (1915), and State ex rel. Mathews v. Murray, 70 Nev. 116, 258 P.2d 982 (1953). One of the requirements recognized by both Nevada authorities is that the position be created by legislative enactment. The position of Juvenile Probation Officer was created by chapter 63 of the 1949 Statutes of Nevada, now NRS 62.115, as amended in 1969. The duties of said position are fixed by NRS 62.122, which was added to NRS in 1969.

Since a statute created the position, the laws dealing with statutory construction should be applied to determine the intent of the Legislature in creating this position. It was so held in State ex rel. Kendall v. Cole, *supra,* 38 Nev. at 219, 148 P. at 552:

"It seems to us that since an office is a creature of the consti- tution, of legislative enactment, or of some municipal body, we must look to the instrument which it is alleged created the position to determine the intent of the body creating, which, in this case, is the legislature. It would certainly be a remark- able situation if the legislature, by the act in question[,] created an office without any intention so to do. Indeed, it has been held that, in determining whether or not the legislature in fact created an office, we must look to the intent of the legislature. [Citations omitted.]

" 'When the legislature created and called it an 'office' it was an office, not because the peculiar duties of the place con- stituted it such, but because the creative will of the law-making power impressed that stamp upon it.' (*Brown* v. *Turner,* 70 N.C. 99.)"

Going to the words of the original statute, Law of March 15, 1949, ch. 63, §§ 10, 11 [1949] Stats. Nev. 77–78, states as follows:

"SEC. 10. The judge or judges of each judicial district shall appoint one or more *probation officers and such other employees* as may be required to carry on the work of the probation department and detention home. If more than one probation officer is appointed, one of them shall be designated as chief probation officer. *All probation officers and detention personnel shall be appointed* from lists of eligible persons established through competitive examinations conducted by the probation committee. *Probation officers and employees* may be removed, discharged, or reduced in position only after having been given the reasons therefor in writing and being afforded an opportunity to be heard before the judge in answer thereto.

"Whenever the judge serves two or more counties, probation officers may be appointed to serve said counties jointly, and the salaries and expenses of such probation officers shall be allocated between said counties by the judge thereof.

"*The salaries of the probation officers, detention home personnel, and other employees* shall be fixed by the judge with the advice of the probation committee and consent of the board or boards of county commissioners.

"SEC. 11. The probation officer under the general supervision of the judge or judges and with the advice of the probation committee shall organize, direct, and develop the administrative work of the probation department and detention home, including the social, financial and clerical work, and he shall perform such other duties as the judge may direct. All information obtained in discharge of official duty *by an officer or other employee* of the court shall be privileged and shall not be disclosed to anyone other than the judge and others entitled under this act to receive such information, unless and until otherwise ordered by the judge.

"*Probation officers and assistant probation officers* shall have the same powers as peace officers." (Emphasis added.)

The use of the phrase "and such other employees" in section 10 would seem to relate back to "probation officers" as being "employees". However, the remainder of sections 10 and 11 specifically distinguish between "probation officers" and the "other employee[s]".

The use of the word "appoint" in relation to the probation officer is significant. The common and usual meaning of "appoint" is to an office. Employees are hired or employed. See Reddell v. State, 170 P. 273, 274 (Okla.App. 1918):

". . . [T]he word 'appointment' is ordinarily used in connection with the designation of a person to an office or some similar but subordinate employment, and the term 'employment' has often been used to distinguish an office from a position of a subordinate degree, such as a clerkship or servant, in continuous service of the employé [sic]. . . ."

In United States v. Schlierholz, 137 F. 616, 624 (E.D. Ark. 1905), the court held:

". . . In the common acceptation, the meaning of the words 'appointment' and 'employment' is quite different. An officer is usually appointed, while a person employed is spoken of as an 'employee,' and but rarely, if ever, as an 'officer.'

"The Century Dictionary defines 'appointment' as, 'the act of appointing, designating, or placing in office. An office held by a person appointed.'

"Among the definitions given to those words by the courts are the following:

" 'Appointment is the designation of a person by the person having authority therefor to discharge the duties of some office or trust.' State [ex rel. Nicholls v. City of] New Orleans, 41 La. Ann. 156, 6 South. [sic] 592. 'Where the selection of an officer is referred to some functionary, it is called an "appointment." ' Speed v. Crawford, 60 Ky. [(3 Metc.)] 207.

"The definition of 'employé,' as given by the Century Dictionary is:

"One who works for an employer; a person working for salary or wages; applied to any one so working, but usually only to clerks, workmen, laborers, etc., and but rarely to the higher officers of a corporation or government or to domestic servants.

"In [In] re Courtland Manufacturing Co. (Sup.), 45 N.Y. Supp. 630, an 'employé' is defined to be a person who is employed; one who works for wages or a salary.

"In Palmer v. Van Santvoord, 153 N.Y. 612, 47 N.E. 915, 38 L.R.A. 402, the court held:

" 'An employé is one who works for an employer; a person working for a salary or wage. The word is applied to any one so working, but usually only to clerks, workmen, laborers, etc., and but rarely to officers of a government or corporation.' "

It is clear that our Legislature intended, and so provided, that a juvenile probation officer is a "public officer" and not an employee. Other jurisdictions have so held. In the Florida case of State ex rel. Gibbs v. Martens, 193 So. 835 (Fla. 1940), it was held that juvenile probation officers were "officers" and not "employees" and therefore had to be elected or appointed by

the governor. The Florida statute was similar to that of Nevada in that it provided for appointment by the judge of the juvenile court. Also see Nicholl v. Koster, 108 P. 302 (Cal. 1910); Gibson v. Civil Serv. Comm'n, 150 P. 78 (Cal.App. 1915).

Appellant held the position of Director of Juvenile Court Services of Clark County from June 4, 1964, to May 4, 1968. The statute creating the position was Law of April 12, 1963, ch. 316, § 2 [1963] Stats. Nev. 582, which provides as follows:

"SEC. 2. *1. The judge or judges of each judicial district which includes a` county having a population of 120,000 or more, as determined by the last preceding national census of the Bureau of the Census of the United States Department of Commerce, may* **appoint** *a director of court services directly responsible to the court to coordinate the services of and serve as liaison between`the court and all agencies in the judicial district dealing with juveniles, including, but not limited to, the state welfare department, the public schools of the judicial district, all law enforcement agencies of the judicial district, the probation committee, and detention home or facilities of the judicial district.*

"*2. The director of court services shall be* **appointed** *from a list of eligible persons established through competitive examinations conducted by the probation committee.*

"*3. The director of court services shall serve at the pleasure of the court and be subject to removal or discharge only after having been given reasons therefor, in writing, and after having been afforded an opportunity to be heard before the judge to answer thereto.*

"*4.* **The director of court services shall have such staff of employees** *to assist in the performance of his duties as the probation committee finds necessary.*

"*5.* **The salaries of the director of court services and his staff of employees** *shall be fixed by the judge or judges with the advice of the probation committee and the consent of the board or boards of county commissioners of the county or counties served by the judicial district.*" (Bold indicates emphasis added.)

Again, in determining the legislative intent, the director is to be "appointed", not employed or hired. There is a consistent distinction between the director and "such staff of employees". These matters, together with the importance of this position, show the Legislature intended to create an office and that the person filling said position would be a public officer.

Appellant claimed his right to recover under Clark County Ordinance No. 194 (thereafter repealed by Ordinance No. 300), whose title read:

"An ordinance fixing the compensation of appointed and classified officers and employees of the County of Clark and fixing the regulations covering vacation, sick leave, and leave without pay of all elective and appointed officers and employees of the County of Clark, repealing County Ordinances Nos. 29, 83, and 101."

The main purpose of Ordinance No. 194 was to provide a classification of employees and a schedule of salaries for officers and employees so as to provide for raises without the necessity of the Board of County Commissioners' considering raises on an individual basis. Section 15 of said ordinance provides for overtime payment for employees. The county would have no authority to enact an ordinance contrary to a state statute [NRS 281.100, subsection 3(a)] that would authorize overtime payment to a county officer. Office Specialty Mfg. Co. v. Washoe County, 24 Nev. 359, 55 P. 222 (1898); State ex rel. Henderson Banking Co. v. McBridge, 31 Nev. 57, 99 P. 705 (1909). In fact, the action of the Clark County Board of County Commissioners in granting appellant pay for the additional 480 hours is, in my opinion, very questionable, and the appellant could be required to return the money paid to him.

For the reasons herein stated, I would affirm Judge Gang's order granting summary judgment in favor of the respondents and against the appellant.