STATE *ex rel.* GEORGE COUPER GIBBS, Attorney General, v. PAUL M. MARTENS.

193 So. 835

En Banc

Opinion Filed January 31, 1940

Rehearing Denied February 23, 1940

668

*George Couper Gibbs,* Attorney General, *George E. Holt,* and *Carson, Petteway & Stembler,* for Relator;

*Jack Kehoe,* for Respondent.

THOMAS, J.—A writ of quo warranto was issued upon the information of the Attorney General requiring respondent to show his authority for exercising the prerogatives of the office of probation officer for Dade County.

Upon motion to dismiss and the answer of respondent the matter is submitted for our determination.

It is claimed by respondent that he was appointed under the provisions of Chapter 8663, Special Acts of 1921, as amended by Chapter 11359, Acts of 1925, Ex. Sess., for a period of four years and that although his term has expired no one has been named to succeed him; therefore, he is entitled to serve until a successor is properly appointed and qualified.

The first of these statutes created a juvenile court in Dade County and provided that the governor should appoint a probation officer for a term of four years with the duties then, and thereafter to be, prescribed by law. The second Act amended the original one in certain respects not germane to the question involved in this litigation.

In 1939 a general law was passed and subsequently became effective providing that in the stead of any probation officer or assistant serving in any juvenile court the judge of such court was empowered to choose and employ a chief probation deputy and three assistants at the pleasure of the judge and for such time as he approved. Under this.

statute the officers thus selected were empowered to take delinquent children into custody "* * * on order of the court, to serve all papers, citations, summons, notices of hearings, subpoenas, and other orders of such court on any person to appear in such juvenile court, or before the judge of such court in connection with any matter involving a dependent or delinquent child, or any adult in connection therewith. * * *" and it was made the "* * * duty of any person thus served to respond thereto, or be subject to punishment for contempt of such court, for failure to so do." These officers were given the "right to take into custody without warrant any person committing in their presence an offense against any delinquent or dependent child, or in contempt of and against the peace and dignity of the court, or violating in their presence any legal orders of the court." Chapter 19002, Acts of 1939, Sec. 4.

We have not detailed all of the prerogatives of these officers to be chosen by the juvenile judge and to serve at his pleasure but only enough of them to indicate the nature of the powers attempted to be conferred upon them by the Act.

Decision of the question posed in this litigation requires a study of the constitutionality of the latest Act placing the authority for appointing probation officers, with the important powers we have set out, in the hands of a juvenile judge who can terminate their tenure at his pleasure. The bounds of the Constitution within which such legislation is confined are as follows:

"The Legislature shall provide for the election by the people or appointment by the Governor of all State and county officers not otherwise provided for by this Constitution, and fix by law their duties and compensation." Art. III, Sec. 27, Constitution.

There is no pretense by the Act to repose the appointive power in the Governor or to give the people a voice in the selection of the probation officers. On the contrary, they are to be picked by the juvenile judge and he can end such appointment when he pleases. If, then, they are officers the Act must fall and to determine their status we will review some of our own decisions bearing in mind, meanwhile, the nature of the powers which they may exercise such as the service of subpoenas, arrest without warrant and the like.

In State *ex rel*. Clyatt v. Hocker, 39 Fla. 477, 484, 22 South. Rep. 721, 63 Am. St. Rep. 174, the Court was testing the constitutionality of an Act relating to the examination of applicants for admission to the bar by a board to be appointed by the Supreme Court. It was decided that regulation of the legal profession in order to prevent damage by those unlearned in the law was an exercise of the police power and that the examiners in carrying out the purpose of the Act would perform "governmental functions." In such exercise of sovereign power the supervisory board could be vested with authority only by election of the people or appointment by the governor so the Act providing for selection of the personnel of the board by this Court was held violative of the fundamental law. In this decision appeared a definition of the word "office" which we find repeated in McSween v. State Live Stock Sanitary Board of Fla., 97 Fla. 750, 769, 122 South. Rep. 239, 246, 65 A. L. R. 508. We will not quote it in full here but will draw attention only to the substance of it, namely, that the word "implies a delegation of a portion of the sovereign power to * * * the person filling the office." Applicability of the constitutional provision was under consideration in the latter case with reference to the designation of a State

veterinarian by the State Live Stock Sanitary Board to perform duties defined by the Legislature and to be defined by the board. These duties were decided by the Court to be of such character that they should only be undertaken by an officer elected by the people or appointed by the Governor. We will not attempt to delineate the powers of the State veterinarian here but the general purpose of them was the enforcement of regulations to protect cattle, hogs and other domestic animals.

The right, particularly, to arrest without warrant indicates the type of power delegated to officers in question and definitely places them in the category of "officers" rather than "employees" for no right is more sacred or more jealously guarded than the one that liberty shall not be infringed except by due process of law.

It is urged by relators that under certain circumstances railroad conductors and others designated by statute may make arrests although not commissioned as officers but we do not understand the analogy of these references to the case at bar. The officers charged with the duties outlined in the Act were not intended to function only in emergency or any peculiar circumstances, but their prerogatives were of a "continuing" nature, a characteristic considered in McSween v. State Live Stock Sanitary Board of Florida, *supra,* and State *ex rel.* Clyatt v. Hocker, *supra.*

As we have seen, duties delegated to boards to regulate the admission of attorneys to the practice of their profession and to supervise the live stock industry have been held ineffectual because no one may assume such responsibility unless he has been so entrusted by the governor or the people.

There is no need to relax the rule or recede from our former position in this controversy nor can what has been

said be understood as depreciation of the work of those important tribunals, the juvenile courts. Certainly no feature of our civilization deserves more sincere thought, conscientious effort or enthusiastic · support, than the protection of children. If exception were to be made, the safeguard of the Constitution should be more vigorously applied where the welfare of the child is concerned for this inhibition cannot be considered an impediment. It is an assurance that he who undertakes the tremendous responsibility of supervising the infant shall receive his charge from the people or their chief executive. A plan for these officers to be thus commissioned for a definite term would in no wise be inferior to one allowing their selection by the judge, and their discharge at his pleasure.

We conclude that the provisions with reference to the selection of the probation officers are violative of the Constitution.

It is contended by relator that it was the intention of the Legislature to provide for the selection of employees without any duties as officers. Section 11 is to that effect but read in conjunction with the other portions we cannot but conclude that the whole scheme is to provide for the efficient operation of the juvenile court which contemplates execution of process, arrests and the general exercise of powers indispensible to effective administration of the affairs of the court. Realizing the necessity for power in its executive officers if a court is to function properly and effectively, we cannot agree that such power can be reposed to that end in a fashion not permitted by the Constitution giving the one empowered the status of "officer" by reason of that authority, and then, the authority remaining, that the dignity of the position can be reduced to "employee" obviating his appointment by the Governor

or election by the people. The dignity of the post is determined largely, if not entirely, by the authority it carries with it. :

The same section contains the provisions that: "any duty, power, or authority otherwise herein sought to be conferred on any employee herein authorized, in conflict with such purpose and intention, shall be disregarded and held null and void, * * *."

It is not possible to segregate the duties which could be performed by an officer from those which could be performed by an employee and preserve the general plan for an efficient court; therefore, the section in its entirety cannot be relied upon to cure the objection to the whole Act.

By another section (10), the terms and offices of probation officers serving at the time the Act took effect were terminated and it is asserted that respondent's tenure was, therefore, concluded. Counsel for relator insists that this may be relied upon to terminate the tenure of the respondent even if other parts of the law are held invalid.

The practical effect of our ruling with reference to the first question, it seems to us, does away with the need for passing upon the latter one. Respondent's term having expired by the terms of the commission there is no reason to adjudge that it is at an end by the provisions of the Act. The encumbent simply serves until his successor is appointed by the Governor.

The writ is discharged.

TERRELL, C. J., WHITFIELD, BUFORD and CHAPMAN, J. J., concur.

BROWN, J., absent because of illness.

674

On Petition for Rehearing

Per Curiam.—We have before us petition for rehearing in the above stated cause. It appears from the petition that our opinion filed here on January 31, 1940, is confusing to the relator because of our reference therein to "officers" and not sufficiently differentiating between the terms "officers" and "probation deputies." This occurred because we considered it immaterial what name may be applied to the incumbent of a position; if the powers and duties reposed in the incumbent are such that he exercises the functions of sovereignty, then such incumbent is an officer, regardless of the name by which he may be designated or called.

Section 10 of Chapter 19002, Laws of Florida, 1939, is as follows:

"Section 10. The office, term, commission, appointment, employment, duties and compensation of any probation officer, and those of any assistant probation officer, now serving in any county in any juvenile court affected by the provisions of this Act, whether under the provisions of any general law, or special law, or local law or Act, shall at once cease, terminate and be ended and the offices of probation officer and assistant probation officers in all such counties shall be and they are hereby abolished. Provided, however, on order of the judge of the juvenile court in any such county, any persons filling any such offices in such county, may be thereafter employed and continued as chief probation deputy, or assistant probation deputy, to serve at the pleasure of the court and for only so long as approved by such judge and subject to all the provisions of this Act."

The chapter, supra, was enacted for the purpose as stated in the title to the Act, which is as follows:

"An Act To Provide for the Naming, Qualifications, Duties, Salaries and Employment of a Chief Probation

Deputy, and Assistant Probation Deputies, in Lieu of Probation Officers and Assistant Probation Officers in Any of Those Counties of this State Which Now Have, or Which May Hereafter Have, a Population of Over One Hundred and Eighty Thousand People: To Provide that the Judge of the Juvenile Court in Such Counties Shall Select and Approve All Employees Especially Engaged for Duty and Service in Such Courts: To provide for the Assistance of Such Courts by Other Officers of the Law; and To Repeal All Laws or Parts of Laws in Conflict."

And, inasmuch as we hold in our opinion, *supra,* that the provisions of the Act were ineffective to authorize the appointment of a Chief Probation Deputy and Assistant Probation Deputies, it must follow that there is no Juvenile Court affected by the provisions of that Act and, therefore, the provisions of that Act do not affect "the office, term, commission, appointment, duties and compensation of any probation officer and those of any assistant probation officer."

The provisions of the Act being such that it conflicts with the Constitution, as pointed out in our opinion, *supra,* the whole Act must fall.

Petition for rehearing denied.

TERRELL, C. J., WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.

Justice BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.