QUESTIONS:
1. May an elected city council member, or candidate for that office, also serve as a certified reserve police officer under the Florida Constitution and Florida Statutes?
2. Does the Charter of the City of Edgewood prohibit the above-stated activity?
3. What effect does the charter provision which prohibits candidates for the office of council member or mayor, upon qualifying, from serving as appointed officials of the city have upon present or `sitting' council members?
The prohibition against dual officeholding contained in the City of Edgewood charter is applicable only when two elective offices are involved. The city charter provision prohibiting a candidate for the office of council member or mayor from serving as a salaried or nonsalaried appointed official of the city may operate to create a vacancy in the office of reserve police officer when such officer qualifies as a candidate for council member. Since the charter provision is not self-executing, a reserve police officer should resign his office upon qualifying as a candidate for the city council or for mayor.
SUMMARY:
A part-time auxiliary or reserve police officer, certified by the Police Standards and Training Commission, is an `officer' within the purview of constitutional prohibition against dual officeholding and, therefore, may not simultaneously serve as a city council member. Such an officer whose term runs concurrently with that of chief of police, who serves until just cause for replacement, should resign his office under the Resign-to-Run Law effective as of the date upon which the duties of the office of council member would be assumed.
AS TO QUESTION 1:
Your first question is answered in the negative.
Section 5(a), Art, II, State Const., prohibits a person from simultaneously holding `more than one office under the governing of the state and the counties and municipalities therein . . . .' Although the term `office' has not been constitutionally defined, the Florida Supreme Court has stated:
 The term `office' implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office. . . . The term `office' embraces the idea of tenure, duration, and duties in exercising some portion of the sovereign power, conferred or defined by law and not by contract. [State ex rel. Holloway v. Sheats, 83 So. 508, 509
(Fla. 1919).]
A city council member is clearly a municipal officer within the purview of s. 5(a), Art. II, State Const. The important consideration is whether a `certified reserve police officer' is also an officer or merely an employee. Previous opinions of this office have indicated that a municipal policeman is an officer within the scope of this constitutional provision. Cf. AGO's 057-165; 058-26; 069-2; 071-167; 072-348; and 076-92. Moreover, the Florida Supreme Court in Curry v. Hammond, 16 So.2d 523 (Fla. 1944), stated:
 It can hardly be questioned that a patrolman on a city police force is clothed with sovereign power of the city while discharging his duty. . . . True, he is an employee of the city but is also an officer. It is the character of duty performed that must determine his status.
Accord, Paquin v. City of Lighthouse Point, 330 So.2d 866 (4 D.C.A. Fla., 1976); Maudsley v. City of North Lauderdale,300 So.2d 304 (4 D.C.A. Fla., 1974). The powers which a police officer may exercise, particularly the authority to arrest without a warrant, and not the salary or certification requirements, determine that a police officer is an `officer.' Maudsley, supra;cf. State ex rel. Gibbs v. Martens, 193 So. 835, 837 (Fla. 1940), in which the court held that a probation officer was an `officer' since he had the right to arrest without a warrant for `no right is more sacred or more jealously guarded than the one that liberty will not be infringed except by due process of law.'
Your inquiry is, however, directed to those police officers who serve part time without compensation. See s. 943.10(4), F. S., which defines `part-time' or `auxiliary' police officers as persons who are `employed, with or without compensation, less than full time by the state or any political subdivision or municipality thereof, whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, traffic, or highway laws of this state.' The Police Standards and Training Commission of the Department of Criminal Law Enforcement is charged with the responsibility of establishing uniform minimum standards for the employment and training of these officers, s.943.12(2), F. S., and the issuance of certificates of compliance to those persons satisfactorily completing or complying with the prescribed training program, s. 943.14, F.S. No person may be employed as a part-time or auxiliary police officer until he has obtained such a certificate of compliance with certain exceptions not material to the present inquiry. If the part-time or auxiliary police reserves of a municipality fail to meet the requirements of ss. 943.12-943.14, F. S., and the rules and regulations of the Police Standards and Training Commission, their authority to act and function as auxiliary police officers is limited and their power to arrest is no greater than that of a private citizen. See
AGO 073-398; cf. AGO 073-14. It is assumed for the purposes of this inquiry that a `certified reserve police officer' referred to in your letter has satisfied the requirements set by the Police Standards and Training Commission. Such an officer may carry arms and exercise the power of arrest.
Accordingly, I am of the opinion that the position of `certified reserve police officer' constitutes an `office' within the purview of s. 5(a), Art. II, State Const.; therefore, the simultaneous service of an individual as a reserve or auxiliary police officer and as a city council member violates the prohibition against dual officeholding contained in the foregoing constitutional provision.
You also inquire as to whether a candidate for the office of city council member may serve as `certified reserve police officer.' Section 99.012(2), F. S., Florida's Resign-to-Run Law, provides in pertinent part:
 No individual may qualify as a candidate for public office who holds another elective or appointive office, whether state, county or municipal, the term of which or any part thereof runs concurrently with the term of office for which he seeks to qualify without resigning from such office not less than 10 days prior to the first day of qualifying for the office he intends to seek. . . . (Emphasis supplied.)
The foregoing statutory provision requires that an officer resign at the time and in the manner prescribed in s. 99.012, F. S., only when his present term for elective or appointive office, or any part thereof, would run concurrently with or overlap the term of the office for which he seeks to qualify. Such resignation becomes effective at that time and has the effect of creating a vacancy in the office of police officer, as provided in the statutes, but the officer may continue to serve until such time as his successor is appointed and qualified on or following the effective date of the resignation as specified in s. 99.021, F.S. Cf. AGO's 075-67, 074-210, 072-203, and 072-201. But see Art. III, s. 3.07, City Charter (1975) of the City of Edgewood which prohibits any candidate for elective office of council member or mayor, subsequent to qualifying, from serving as a salaried or nonsalaried appointive official in the city. Thus, the provisions contained in s. 99.021, F. S., may not be applicable to your inquiry since s. 3.07 of the City Charter appears t create a vacancy in the office of `certified reserve police officer' at a point in time earlier than that required by s. 99.021. See
question 2, infra, for a further discussion of the impact of this charter provision.
If the office of `certified reserve police officer' has no definite term fixed by law, under the common-law rule `the office is held for the term of the appointing power, or at the will or pleasure of the authority which conferred it, provided the term so conferred does not extend beyond that of the appointing power.' 62 C.J.S. Municipal Corporations s. 497, p. 936; 67 C.J.S. Officers
s. 46, p. 200; cf. State ex rel. Gibbs v. Bloodworth, 184 So. 1, 6
(Fla. 1938); 67 C.J.S. Officers, p. 196 (officer removable at pleasure of appointing power has no `term' of office). Even if an officer serves without a fixed term, `he will be able to use the prestige and power of his office in seeking election to another office and . . . the spirit and intent of the law, if not its letter, dictate that such an official should comply with the Resign-to-Run Law.' Attorney General Opinion 072-203.
`Whether a public officer has a fixed term of office can be determined only by reference to the law creating the office . . . .' State ex rel. Gibbs, supra, at 6. The revised city charter (1975) is silent as to the appointment of part-time reserve or auxiliary police officers; however, it does provide for the appointment of the police chief by the city council, Art. IV, s. 406. The chief of police serves until just cause for replacement and is charged with the responsibility of administering `the working hours, assignments, training, performance, etc., of the regular members of the Police Department, the Reserves, and the Dispatchers.' Article IV, s. 4.06A. Thus, it appears that the chief of police is the appointing power for the reserves with regard to the Resign-to-Run Law, and, accordingly, the term of office for a member of the reserves coincides with that of the chief of police. Therefore, it appears that a reserve police officer should resign his office under the terms of s. 99.012, F. S., as his tenure of office, which is the same as that of the chief of police, would not ordinarily expire until after the date he would assume the position of city council member, if elected. Accordingly, for purposes of the Resign-to-Run Law, a reserve police officer seeking the office of council member should resign, effective as of the date upon which the duties of the new office would be assumed. Attorney General Opinion 072-203. But see, Art. III, s. 3.07 of the city charter (1975), infra.
AS TO QUESTION 2:
Your second question is directed to the effect the provisions contained in the city charter have on a `certified reserve police officer' also serving as city council member or as a candidate for that position. Under Art. III, s. 3.06, of the present charter.
 No Council member or Mayor may hold two (2) elective offices, whether such offices are Federal, State, County or Municipal. Any City Council member or Mayor upon formally qualifying for any elected officer other than the Mayor's or City Council member's office in the City of Edgewood, such office, Mayor or City Council member, shall become vacated or be filled as provided herein this Charter. (Emphasis supplied.)
The prohibition against dual officeholding contained in this section of the charter is applicable only when two elective officers are involved. Council members are elected to the city council under Art. III, s. 3.01 of the charter. Thus, the charter's prohibition against dual officeholding would be applicable to your inquiry only if the office of `certified reserve police officer' is an elected office. It should be noted, however, that s. 5(a), Art. II, State Const., does not distinguish between elective and appointive officers. The constitutional
prohibition against dual officeholding is, therefore, *4944 applicable to city council members and police officers whether they are elected or appointed.
The city charter also provides that `[n]o candidate for elected office of Council member or Mayor shall, subsequent to qualifying, serve as a salaried or nonsalaried appointed official in the City of Edgewood. III, s. 3.07, charter (1975). Therefore, a `certified reserve police officer,' as an appointive officer of the city, who qualifies as a candidate for the office of council members or mayor is prohibited from serving as a reserve police officer and, by operation of the city charter, may well have, in legal effect, vacated his appointive office. The prohibition contained in Art. III, s. 3.07 of the charter appears to create such a vacancy; however, the section is not self-executing. See In re Advisory Opinions to the Governor, 79 So. 874 (Fla. 1918), in which the court stated that, when a person holding one office is appointed to and accepts another office, such appointment and acceptance vacates the person's right and status to the first office. Cf. Holley v. Adams, 238 So.2d 401 (Fla. 1970) (acceptance of incompatible office by one already holding office operates as resignation of first). Accordingly, to avoid conflict, a reserve police officer who intends to run for the office of council member should resign his position as police officer. Cf. AGO 072-203.
Therefore, until legislatively or judicially settled, I am of the view that a certified reserve police officer should resign his office upon qualifying as a candidate for the city council.
AS TO QUESTION 3:
You also inquire as to the effect of the charter provision, Art. III, s. 3.07, on present or `sitting' council members. As council members are elected pursuant to Art. III, s. 3.01, and, as discussed under question 1, may not simultaneously serve as a reserve or auxiliary police officer, s. 3.07, in terms would not operate on any such `sitting' council members. However, a `sitting' council member who is a candidate for reelection or is a candidate for the office of mayor is also prohibited from serving as a salaried or nonsalaried appointed official (including a reserve or auxiliary police officer) of the city.
Prepared by: Patricia R. Gleason Assistant Attorney General Joslyn Wilson Legal Research Assistant