129 Nev., Advance Opinion 38

# IN THE SUPREME COURT OF THE STATE OF NEVADA

CITY OF SPARKS; SPARKS CIVIL
SERVICE COMMISSION,
Appellants,
vs.
SPARKS MUNICIPAL COURT,
Respondent.

No. 59139



FILED

MAY 3 0 2013

Appeal from a district court order granting a preliminary injunction. Second Judicial District Court, Washoe County; Steven P. Elliott, Judge.

*Affirmed in part, reversed in part, and remanded.*

Lemons, Grundy & Eisenberg and Alice Campos Mercado, Reno,
for Appellants.

Holland & Hart LLP and Anthony L. Hall and Deanna C. Brinkerhoff,
Reno,
for Respondent.

Kaempfer Crowell Renshaw Gronauer & Fiorentino and Jason D.
Woodbury, Carson City,
for Amici Curiae Nevada District Judges Association; the Honorable T.
Arthur Ritchie, Jr., in his capacity as President of the Nevada District
Judges Association; the Nevada Judges of Limited Jurisdiction; and the
Honorable John Tatro, in his capacity as President of the Nevada Judges
of Limited Jurisdiction.

BEFORE THE COURT EN BANC.

13-15871

*OPINION*

By the Court, HARDESTY, J.:

The City of Sparks has traditionally made most personnel and budget decisions for the Sparks Municipal Court. Following a dispute between these entities over the City's exercise of this authority, the district court enjoined the City from making these decisions in the future based on the Municipal Court's broad authority to manage its own affairs. We are asked to decide whether the separation of powers doctrine and the Municipal Court's inherent authority bar the City from interfering with the Municipal Court's control over personnel decisions. We conclude that they do, and we therefore affirm that portion of the district court's order enjoining the City from interfering with the Municipal Court's ability to make personnel decisions. As to the parties' budgetary dispute, we conclude that the Municipal Court's inherent power over its budget must be weighed against the City's authority over government finances. Because the parties have failed to develop the record sufficiently for us to determine whether the Municipal Court properly invoked its inherent powers on this point, we reverse the district court's order as to this issue and remand the matter for further proceedings consistent with this opinion.

*BACKGROUND*

Appellant City of Sparks is a municipal corporation, organized and existing under the laws of the State of Nevada through a charter approved by the Legislature. By statute, Sparks, like all Nevada cities, is required to have a municipal court with jurisdiction over certain civil and criminal actions arising under city ordinances and other matters directly involving the City. *See* NRS 5.010, 5.050. The Sparks City Charter

provides for respondent Sparks Municipal Court in Article IV, entitled "Judicial Department." In addition to the judicial department, the charter separates the governmental functions of the City into a legislative department, which is made up of the Sparks City Council, see Sparks City Charter art. II, § 2.010, and the executive department, which consists of the mayor, the city manager, and the city attorney, among other city officers.[1] See Sparks City Charter art. III, §§ 3.010-.070. Thus, the structure of the Sparks government mirrors the tripartite system of government established for the state by the Nevada Constitution. Nev. Const. art. 3, § 1.

Historically, the City has subjected certain employees of the Municipal Court to provisions of the Sparks City Charter and to the Sparks Civil Service Commission's[2] rules, which also govern the City's employees. These provisions and rules have allowed the City to make or influence decisions regarding the selection, discipline, transfer, and termination of Municipal Court employees. The City has also routinely

---

[1]As the powers of both the legislative and the executive branches of the City of Sparks are implicated by the issues raised in this appeal, we refer to those branches as appropriate in this opinion, although we note that the particular government entities making up these branches have not been specifically designated as parties in these proceedings. See Sparks City Charter art. II, § 2.010 (vesting the legislative power of the City in the city council); Sparks City Charter art. III, §§ 3.010, 3.020, 3.040, and 3.050 (identifying the duties of the mayor, city manager, city clerk, and city attorney, respectively, in their roles as part of the City's executive branch).

[2]Appellant Sparks Civil Service Commission is a body of five Sparks residents appointed by the mayor that is responsible for adopting regulations governing the selection and appointment of all employees of the City. Sparks City Charter art. IX, §§ 9.010, 9.020.

entered into collective bargaining agreements with two labor organizations that have further affected the terms and conditions of employment, including wages and disciplinary procedures, for certain Municipal Court employees.

The events underlying this appeal were set in motion when the Sparks City Council asked the Municipal Court to reduce the salaries of its court administrator and judicial assistant by 7.5 percent beginning on July 1, 2010, and an additional 7.5 percent effective July 1, 2011, which appears to result in a 15-percent salary reduction for those employees over a two-year period. The request prompted the Municipal Court to question the City's authority to require it to reduce the salaries of these Municipal Court positions by specific amounts when the positions are exempt from the city charter provisions and civil service rules governing City employees. In presenting its concerns to the City, the Municipal Court also asserted that it holds certain inherent powers, pursuant to the separation of powers doctrine of the Nevada Constitution and by virtue of its sheer existence. The Municipal Court contended that those inherent powers include the authority to administer its own budget once that budget is appropriated to it by the City and the power to manage the two employees who would be affected by the proposed reductions.

The Municipal Court indicated that, as a result of these objections, it had instructed the court administrator and the judicial assistant not to execute any documents required to effectuate the salary reductions. In later correspondence, however, the Municipal Court communicated its intention to satisfy the City's budget-cutting objectives, but the record fails to disclose how the reduction was accomplished.

While the Municipal Court purportedly complied with the budget reductions, it continued to seek clarification from the City as to its rights in connection with what the Municipal Court viewed as the City's unconstitutional interference with the Municipal Court's inherent power to administer its budget and manage its employees, including those who had traditionally been treated as City employees: the court administrator, administrative assistant, marshals, court clerk/interpreters, and court clerks I and II.[3] The Municipal Court asserted that the authority to manage these employees gave it the power to make all decisions as to hiring and firing, set the terms and conditions of employment, and determine employee wages. Further, the Municipal Court contended that it was not bound by the collective bargaining agreements negotiated between the City and the labor organizations, the Sparks Police Protective Association (SPPA) and the Operating Engineers Local Union No. 3 (OE3).

At the request of the Municipal Court, the City obtained a legal opinion on these issues from the city attorney, but later asserted that it could not share the opinion with the Municipal Court because doing so would violate the City's attorney-client privilege. Thus, it was agreed that the Municipal Court would need to retain outside counsel to address the questions on which it sought clarification. The Municipal Court thereafter engaged independent counsel, who provided it with a legal opinion that

---

[3]In particular, Section 9.020 of the Sparks City Charter directs the Civil Service Commission to adopt regulations regarding recruitment, promotion, and discipline of City employees; Section 9.060 requires department heads, including the Municipal Court judges, to fill employee vacancies from a list of applicants created by the Commission; and Section 9.100 permits the city manager or his or her representative to suspend, dismiss, or demote covered employees.

concluded that the Municipal Court had the authority to make its own personnel decisions. As to its right to manage its budget, the opinion stated only that "the Court has the discretion to use the budget allocated to it by the City in the manner it sees fit."

Pursuant to the opinion of counsel, the Municipal Court notified the City that it would begin the process of taking control of its personnel by notifying the SPPA and the OE3 that the Municipal Court was not subject to any collective bargaining agreements, informing its employees that they would no longer be considered civil service employees covered by the civil service rules, and explaining to its employees that it would thereafter be responsible for making all substantive personnel decisions. The Municipal Court also stated that it would "continue to meet the City's budget requirements, to the extent feasible to sustain the Municipal Court's essential functions, acknowledging the Municipal Court's ultimate responsibility, and control of the allocation of its budget." The Municipal Court further objected to the method for establishing its budget in the future by requiring an itemized allocation of the appropriation.

In response to the Municipal Court's declaration, the City expressed concern that the Municipal Court's proposed actions could expose both the Court and the City to liability from affected Court employees. The City argued that the Municipal Court's inherent powers did not provide it with unfettered control over its employees in violation of their civil service status and any rights provided to them under collective bargaining agreements and state law. Nevertheless, the City agreed to work with the Municipal Court towards reaching the goal of assuming greater control over its employees. In the months that followed, the City

and the Municipal Court engaged in negotiations in an attempt to draft mutually agreeable proposed amendments to the Sparks City Charter provisions affecting the Municipal Court's ability to manage its employees. The City and the Municipal Court also discussed approaching the SPPA and the OE3 regarding voluntary withdrawal of union representation of Municipal Court employees. During this time, the OE3 withdrew any claim of representation of Municipal Court employees, but the SPPA did not.

Ultimately, the City and the Municipal Court were unable to reach an agreement on amendments to the Sparks City Charter. When the negotiations failed, the Municipal Court filed a complaint in the district court for declaratory and injunctive relief and for writs of mandamus and prohibition to establish its independence from the City to make personnel and budget decisions. In conjunction with its complaint, the Municipal Court also filed an application for a preliminary injunction, which is the subject of this appeal. In the application, the Municipal Court argued that it had the inherent power to make independent decisions regarding its personnel, as well as to determine how to use the budget allocated to it by the City. The Municipal Court asked for an injunction preventing the City from entering into collective bargaining agreements purporting to cover Municipal Court employees and from enforcing provisions of the Sparks City Charter or the civil service rules that the Municipal Court believed interfered with its right to manage its employees and control its budget. Finally, the Municipal Court asserted that the City had threatened to withhold funding for the Municipal Court's attorneys in this case and requested that the City be prohibited

from interfering with its right to retain special counsel in situations such as this one.

The City opposed the application for a preliminary injunction, arguing that the Municipal Court had not met its burden of showing that it would be irreparably harmed in the absence of an injunction or that it had a reasonable likelihood of success on the merits in the underlying action. In particular, although the City recognized that the Municipal Court held certain inherent powers, the City contended that it could not exercise such powers in the absence of a showing that it was unable to perform its judicial functions using established methods. Moreover, the City asserted that the Municipal Court had failed to show that any action of the City had impeded its ability to perform its core constitutional functions.

The Municipal Court filed a reply, asserting that it had suffered and continued to suffer irreparable harm because, by asserting control over the Municipal Court's management of its personnel and budget, the City had impeded the Municipal Court's ability to perform its ministerial functions. As examples, the Municipal Court noted, among other things, that it had been required to close for one hour each day due to budget constraints and that the City had prevented it from using certain volunteers to ensure that all of its functions were fulfilled.

After a hearing, the district court entered an order granting the Municipal Court's application for a preliminary injunction. Concluding that the Municipal Court has the inherent authority to independently manage its employees and its budget, the district court broadly enjoined the City from asserting any control over the Municipal Court's employees, including their selection, discipline, and termination,

and from applying either the civil service rules or certain Sparks City Charter provisions to the Municipal Court. The district court also prohibited the City from entering into or attempting to enforce collective bargaining agreements purporting to cover Municipal Court employees. Although the district court found that the Municipal Court's employees were never properly covered by the civil service rules or the collective bargaining agreements, and thus, did not have any property rights under those sources, the district court ordered the Municipal Court not to withdraw any of the protections purportedly supplied by such rules or agreements without giving its employees 30 days' notice to allow the employees to decide if they wanted to retain their employment under the new rules established by the Municipal Court. As to the budget, the district court enjoined the City from "interfering with the Municipal Court's ability to use, distribute, allocate, and make decisions regarding the budget adopted for it by the City." Finally, with regard to the Municipal Court's retention of special counsel, the district court enjoined the City from applying NRS 41.0344 or Sparks City Charter art. III, § 3.055 in the pending proceedings. This appeal followed.

## DISCUSSION

### Standard of review

A preliminary injunction is available when it appears from the complaint that the moving party has a reasonable likelihood of success on the merits and the nonmoving party's conduct, if allowed to continue, will cause the moving party irreparable harm for which compensatory relief is inadequate. NRS 33.010; *Univ. & Cmty. Coll. Sys. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004). As a constitutional violation may be difficult or impossible to remedy through money damages, such a violation may, by itself, be sufficient to constitute

irreparable harm. *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). Whether to grant or deny a preliminary injunction is within the district court's discretion. *Nevadans for Sound Gov't*, 120 Nev. at 721, 100 P.3d at 187. In the context of an appeal from a preliminary injunction, we review questions of law de novo and the district court's factual findings for clear error or a lack of substantial evidentiary support. *Id.*

We begin our consideration of the issues presented in this appeal by examining the Nevada Constitution's impact on the parties' dispute over whether the City or the Municipal Court is properly vested with the authority to manage and control Municipal Court employees, before addressing the issues concerning the budget. As to the personnel issues, we must determine whether Article 15, Section 11 of the Nevada Constitution authorizes the City to control the hiring, supervision, and discipline of Municipal Court employees based on the inclusion of certain provisions to that effect in the Sparks City Charter. Because we conclude that the Constitution does not confer such authority on the City, we must next address whether the City's exercise of such control unconstitutionally interferes with the inherent powers possessed by the Municipal Court based on the separation of powers doctrine and by virtue of its sheer existence.

*Article 15, Section 11*

Initially, we note that the issues presented by this matter arose out of the City's request that the Municipal Court reduce the salaries of the court administrator and judicial assistant. The City concedes, as it must, that under Sparks City Charter art. IV, §§ 4.023 and 4.025, the Municipal Court has "virtually unfettered authority" over the hiring and firing of its court administrator and judicial assistant. Thus,

 

what is at issue here is whether the Municipal Court or the City may exercise control over the remaining Municipal Court employees, namely, the marshals, court clerk/interpreters, and court clerks I and II. The City claims authority to control certain aspects of the Municipal Court's personnel decisions based on provisions of the city charter, which it contends give the City authority to make decisions with regard to the hiring, supervision, and discipline of Municipal Court employees. But the charter cannot provide the City with authority that is otherwise unconstitutional.

The City attempts to find a viable constitutional basis for the authority to control Municipal Court employees, conferred by the charter, in Article 15, Section 11 of the Nevada Constitution, which provides that

> [t]he tenure of any office not herein provided for may be declared by law, or, when not so declared, such office shall be held during the pleasure of the authority making the appointment, but the Legislature shall not create any office the tenure of which shall be longer than four (4) years, except as herein otherwise provided in this Constitution. In the case of any officer or employee of any municipality governed under a legally adopted charter, the provisions of such charter with reference to the tenure of office or the dismissal from office of any such officer or employee shall control.

The City more specifically contends that Article 15, Section 11 permits a municipality to enact charter provisions governing the tenure and dismissal of all city employees, including Municipal Court employees. The

Municipal Court asserts that Article 15, Section 11 applies only to city officers, as distinguished from city employees.[4]

This court has long recognized the distinction between an "officer" and an "employee." *Compare Eads v. City of Boulder City*, 94 Nev. 735, 736-37, 587 P.2d 39, 40-41 (1978) (holding that a position created and defined by law, which invested the person holding it with a "portion of the sovereign functions of government," was an office), *with Mullen v. Clark Cnty.*, 89 Nev. 308, 310-11, 511 P.2d 1036, 1037-38 (1973) (concluding that an individual was an employee and not an officer when his duties were defined by his superiors, "no tenure attached to his position," he could not hire or fire other employees, and "he was wholly subordinate and responsible to his superiors"); *see also State v. Cole*, 38 Nev. 215, 148 P. 551 (1915) (determining that a party was not an officer for the purpose of a constitutional provision prohibiting a senator from being appointed to an office created during the term in which the senator was elected). The parties do not dispute that the controversy in this action involves only employees of the Municipal Court, as opposed to officers. Thus, if Article 15, Section 11 applies only to officers, it has no application to this action. But if Article 15, Section 11 applies generally to employees as well as officers, the charter provisions provide a valid basis for the City to exercise control over the tenure and dismissal of Municipal Court employees.

---

[4]The Municipal Court alternatively argues that its employees are not city employees. Because we conclude that Article 15, Section 11 generally does not apply to city employees, we need not reach the Municipal Court's alternative argument.

Determining whether Article 15, Section 11 applies to city employees requires us to interpret that constitutional provision. "The rules of statutory construction apply to the interpretation of a constitutional provision." *We the People Nev. v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1170 (2008). Thus, we look first to the plain language of the provision, and, if the meaning of that language is unambiguous, we do not look beyond it, *Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 579-80, 97 P.2d 1132, 1135 (2004), unless it is clear that the ordinary meaning was not intended by the drafters. *City of Reno v. Bldg. & Constr. Trades Council of N. Nev.*, 127 Nev. ___, ___, 251 P.3d 718, 722 (2011). A provision is ambiguous if its language may be reasonably interpreted in two or more inconsistent ways. *Strickland v. Waymire*, 126 Nev. ___, ___, 235 P.3d 605, 608 (2010). In order to interpret an ambiguous constitutional provision, we consider "'the provision's history, public policy, and reason to determine what the voters intended.'" *Id.* (quoting *Miller v. Burk*, 124 Nev. 579, 590, 188 P.3d 1112, 1120 (2008)). "The goal of constitutional interpretation is to determine the public understanding of a legal text leading up to and in the period after its enactment or ratification." *Strickland*, 126 Nev. at ___, 235 P.3d at 608 (internal quotations omitted).

On its face, the relevant language of Article 15, Section 11 is ambiguous. In particular, although the text refers to "any officer or employee" of a municipality, it also states that the charter will control as to the "tenure *of office* or the dismissal *from office*" of those officers or employees. Nev. Const. art. 15, § 11 (emphasis added). This creates an ambiguity because reading the provision to apply only to officers appears to render the phrase "or employee" meaningless, while reading it to apply

SUPREME COURT
OF
NEVADA

(O) 1947A

to both officers and employees seems to render the phrases "of office" and "from office" meaningless. *See Eads*, 94 Nev. at 736-37, 587 P.2d at 40-41 (holding that a position created and defined by law, which invested the person holding it with a "portion of the sovereign functions of the government," was an office). Additionally, as this court's cases have specifically associated "tenure" with officers in discussing the differences between officers and employees, *see Mullen*, 89 Nev. at 311, 511 P.2d at 1038 (concluding that an individual was an employee, rather than an officer, in part because "no tenure attached to his position"); *Cole*, 38 Nev. at 223, 148 P. at 553 (explaining that "[t]he great weight of authority holds the term 'office' to embrace the ideas of tenure, duration, fees, or emoluments, and duties"), reading the provision to apply to employees as well as officers also would arguably be contrary to the usual meaning of the term "tenure."

In the face of this ambiguity, we look beyond the language of the provision to determine the intent of the voters in approving the amendment that added this language to Article 15, Section 11. *See Strickland*, 126 Nev. at ___, 235 P.3d at 608. Prior to 1946, Article 15, Section 11 provided only that

> [t]he tenure of any office not herein provided for may be declared by law, or, when not so declared, such office shall be held during the pleasure of the authority making the appointment, but the legislature shall not create any office the tenure of which shall be longer than four (4) years, except as herein otherwise provided in this constitution.

1945 Nev. Const. art. 15, § 11, at 56. As originally drafted, Article 15, Section 11 plainly applied only to officers, as the provision did not even mention employees. In 1946, the provision was amended to add the final sentence, at issue here, stating that, "[i]n the case of any officer or

employee of any municipality governed under a legally adopted charter, the provisions of such charter with reference to the tenure of office or the dismissal from office of any such officer or employee shall control." *See* 1943 Nev. Stat., Assembly Joint Resolution No. 19, at 325; 1945 Nev. Stat., Assembly Joint Resolution No. 10, at 505; 1947 Nev. Const. art. 15, § 11, at 56.

The stated purpose of the 1946 amendment was "to except [a] municipality from the present constitutional provision that the legislature shall not create any office the tenure of which shall be longer than four years." Legal Notice, *Amendment to the Constitution to Be Voted Upon in State of Nevada at General Election, November 5, 1946,* Nevada State Journal, October 5, 1946, at 9. Because the amendment was intended to create an exception to the existing rule, it follows that only those who had been subject to the pre-amendment provision were meant to be included in the exception. Applying this reasoning, the amendment would not have been intended to apply to employees, as they were not subject to the pre-amendment version of the provision.

This reasoning, however, leads to the question of why the drafters included the term employee in the amended provision if employees were not included within the rule or the exception. The answer to this query is that it appears that the drafters believed that certain city employees, particularly employees within the civil service, were considered to be officers, and thus, were subject to Article 15, Section 11. Editorial, *Question No. 1,* Nevada State Journal, November 2, 1946, at 4 (stating that "[e]mployees of cities, holding civil service status, are considered [to be] holding office and consequently it is contended their tenure of office would be limited to four years by strict application of the

constitution"). As a result, the drafters appear to have intended to exempt from the provision any such employees who were subject to the provision because, in the drafter's view, they were considered to be officers. But as is clear from our jurisprudence, officers are fundamentally different from employees, and thus the employees that this amendment sought to exempt from Article 15, Section 11 were never subject to that provision to begin with based upon the very nature of their roles as employees rather than officers. *See Eads*, 94 Nev. at 736-37, 587 P.2d at 40-41; *Mullen,* 89 Nev. at 311, 511 P.2d at 1038); *Cole*, 38 Nev. at 223, 148 P. at 553. Therefore, in seeking to clarify that employees were not subject to this provision, the amendment instead conflated the meaning of the terms "officers" and "employees" and created the very ambiguity in Article 15, Section 11 that we must now resolve here.

In advancing a literal reading of the text of the amendment to Article 15, Section 11, so that both officers and employees can be constitutionally subject to the charter provisions at issue here, our concurring and dissenting colleague ignores the purpose behind this amendment and the fundamental misapprehension regarding the applicability of the pre-amendment version of Article 15, Section 11 to employees that spurred the amendment's enactment. Adopting the approach taken by our colleague would require us to ignore the well-established distinctions between officers and employees and would only serve to perpetuate the conflation of these terms created by this amendment, which we will not do.

Based on the purpose of the amendment and the apparent intent of the drafters and voters, we conclude that, to the extent that Article 15, Section 11 may apply to city employees, it applies only to

SUPREME COURT
OF
NEVADA

(O) 1947A

employees who are also considered to be officers. In reaching this conclusion, we recognize that, given this court's precedent regarding the differences between officers and employees, it is not clear which, if any, city employees would be deemed to fall into this category. Nevertheless, as it is undisputed that the Municipal Court employees at issue in this case are not considered to be officers, and thus, would not fall under the ambit of Article 15, Section 11, it is not necessary to reach that question here. Thus, Article 15, Section 11 does not render the charter provisions authorizing the City to make decisions regarding the hiring, supervision, and discipline of Municipal Court employees constitutional, and we therefore turn to whether the inherent authority and separation of powers doctrines bar the application of these charter provisions to Municipal Court employees.

*Inherent powers*

This court has long recognized that "the judiciary, as a coequal branch of government, has the inherent power to protect itself and to administer its affairs." *City of N. Las Vegas ex rel. Arndt v. Daines*, 92 Nev. 292, 294, 550 P.2d 399, 400 (1976). "Inherent judicial powers stem from two sources: the separation of powers doctrine and the power inherent in a court by virtue of its sheer existence." *Blackjack Bonding v. City of Las Vegas Mun. Court*, 116 Nev. 1213, 1218, 14 P.3d 1275, 1279 (2000). Of particular importance here, municipal courts, as coequal branches of their local governments, *see Daines*, 92 Nev. at 295, 550 P.2d at 400, and a part of the state constitutional judicial system,[5] *see* Nev.

---

[5]While municipal courts are included within the state constitutional judicial system, they are nonetheless primarily city entities, rather than an extension of the state. *See Nunez v. City of N. Las Vegas*, 116 Nev. 535,

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

Const. art. 6, § 1 (authorizing the Legislature to establish municipal courts as part of the court system vested with the judicial power of the state); *Daines*, 92 Nev. at 295, 550 P.2d at 400, are protected by the constitutional separation of powers doctrine and possess inherent judicial powers to the same extent as the other courts of this state. *See* Nev. Const. art. 3, § 1; *Daines*, 92 Nev. at 295, 550 P.2d at 400; *see also Mowrer v. Rusk*, 618 P.2d 886 (N.M. 1980) (concluding that, although the constitutional separation of powers doctrine generally does not apply to local government entities, it does apply to the New Mexico municipal courts because they are a part of their state judicial system).

Under the separation of powers doctrine of the Nevada Constitution, each of the three branches of government is vested with authority to exercise its own functions, and no branch may exercise the functions of another unless expressly permitted to do so by the Nevada Constitution. *Galloway v. Truesdell*, 83 Nev. 13, 19, 422 P.2d 237, 241-42 (1967) (discussing Nev. Const. art. 3, § 1). Thus, the courts, whose judicial

---

*...continued*
540, 1 P.3d 959, 962 (2000). Beyond this conclusion, we do not find it necessary in resolving this appeal to delineate, as the City asks us to do, the extent to which a municipal court is a part of the city, as opposed to a part of the state judicial system. Although the City contends that resolving this issue will determine the outcome of questions as to whether the Municipal Court is an employer, whether it is subject to NRS Chapter 288, and whether it is exclusively liable for employment-related lawsuits, we conclude that those questions are not properly presented here, as this situation does not involve any Municipal Court employees challenging employment-related decisions. *See Personhood Nev. v. Bristol*, 126 Nev. ___, ___, 245 P.3d 572, 574 (2010) (explaining that "[t]his court's duty is not to render advisory opinions but, rather, to resolve actual controversies by an enforceable judgment").

functions involve hearing and resolving legal controversies, possess the authority to take any actions that are inherent or incidental to that function. *Galloway*, 83 Nev. at 20, 422 P.2d at 242. Furthermore, any statutory scheme that would allow the executive or legislative branches of a municipal government to control or exercise the inherent powers of the municipal court would violate the separation of powers doctrine. *See id.* at 19, 422 P.2d at 241-42; *see also Mowrer*, 618 P.2d at 891.

Each governmental branch also has certain inherent powers, by virtue of its sheer existence and as a coequal branch of government, to carry out its basic functions. *Halverson v. Hardcastle*, 123 Nev. 245, 261, 163 P.3d 428, 439-40 (2007). This authority is "broader and more fundamental than the inherent power conferred by separation of powers." *Blackjack Bonding*, 116 Nev. at 1218, 14 P.3d at 1279. Thus, in addition to the specific powers assigned to the governmental branches, each branch has inherent ministerial powers, which include "methods of implementation to accomplish or put into effect the basic function" of that branch. *Galloway*, 83 Nev. at 21, 422 P.2d at 243. Within these ministerial functions, the powers of the branches sometimes appear to overlap. *Id.* at 21-22, 422 P.2d at 243. To the extent that any duplication of authority can be traced back to the individual branch's essential functions and basic source of power, the overlapping may be valid, but it is essential to the balance of powers that each branch is careful not to impinge on the authority of the other two branches, even in a small and seemingly harmless manner. *Id.*

When a court's inherent authority arises out of the court's management of its own affairs, this court has held that the court is "entitled to manage [its] internal affairs without interference from

separate governmental branches." *Nunez v. City of N. Las Vegas*, 116 Nev. 535, 540, 1 P.3d 959, 962 (2000). Put differently, even apart from any constitutional or statutory concerns, based solely on the court's inherent authority to manage its own affairs, the legislative and executive branches are strictly prohibited from infringing on the court's "incidental powers reasonable and necessary to carry out the duties required for the administration of justice." *Goldberg v. Eighth Judicial Dist. Court*, 93 Nev. 614, 616, 572 P.2d 521, 522 (1977). Thus, if an action falling under the court's inherent authority is part of the court's day-to-day functioning or regular management of its internal affairs, the court is empowered to perform that action without the need for further justification and without interference from the legislative or executive branch. *See id.* In contrast, if the court's need to exercise its inherent authority arises outside of the court's regular management of its affairs, the invocation of the court's inherent powers must be justified by demonstrating that some circumstance requires the court to invoke such authority in order to perform its constitutional functions. *See Halverson*, 123 Nev. at 263, 163 P.3d at 441.

The resolution of the controversy in this action turns on the parties' differing interpretations of the Municipal Court's ability to invoke its inherent powers under the present circumstances. On one side, the Municipal Court contends that it has the inherent power to exercise control over its employees and the budget appropriated to it by the City, and that the City cannot interfere with that power. Conversely, while conceding that the Municipal Court possesses certain inherent powers, the City contends that the Municipal Court may only act pursuant to those powers when it is reasonable and necessary to do so, and the City denies

SUPREME COURT
OF
NEVADA

(O) 1947A

20

that the Municipal Court has demonstrated that it is reasonable and necessary to use its inherent powers in this situation. The City further argues that the Municipal Court has not established a constitutional violation, insofar as it has not shown that any action of the City has impeded its ability to perform its core constitutional functions.

With this background in mind, we turn to the invocations of inherent authority involved in this case.

*Management and control of employees*

The district court's order enjoined the City from exercising any power over Municipal Court employees, including their selection, promotion, or termination. To the extent that both the Municipal Court and the City claim the authority to be involved in the Municipal Court's personnel decisions, this purported function of the two branches appears to overlap. *See Galloway*, 83 Nev. at 21-22, 422 P.2d at 243. In order to determine whether both branches validly claim this authority, the question that follows is whether the function can be traced back to each branch's essential functions and basic source of power. *Id.*

This court has recognized that municipal courts are the judicial branches of their respective city governments, and they possess all of the inherent powers enjoyed by this court, the district courts, and the justice courts. *Nunez*, 116 Nev. at 539-40, 1 P.3d at 962. As such, the Municipal Court's express function is to decide controversies and enforce judgments. *See Galloway*, 83 Nev. at 20, 422 P.2d at 242. It would be impossible for the Municipal Court to exist and fulfill this role without employees to manage the docket, process paperwork, provide administrative assistance, and monitor compliance with its orders, among many other ministerial duties. *See Halverson*, 123 Nev. at 261, 163 P.3d at 439-40 (explaining that some inherent ministerial powers arise out of

the sheer existence of the governmental branches). Furthermore, the Municipal Court must be able to exercise control over the employees who perform these tasks in order to ensure that the appropriate candidates are chosen for the jobs, the tasks are performed in a satisfactory manner, and proper sanctions and rewards are available when necessary. *See State ex rel. Harvey v. Second Judicial Dist. Court*, 117 Nev. 754, 770, 32 P.3d 1263, 1273 (2001) (recognizing that the provisions of the Nevada Constitution providing for an independent judiciary "would be seriously undermined if the judiciary were prohibited, under any circumstance, from exercising direct control over the personnel who were performing vital and essential court functions").

Thus, the Municipal Court's claim of inherent authority to manage its employees relates directly to its essential functions. *See Galloway*, 83 Nev. at 21-22, 422 P.2d at 243. Additionally, because the management of Municipal Court employees is a ministerial function that is implicated by the Municipal Court's everyday management of its internal affairs, we conclude that it is continuously present insofar as its removal would impair the Municipal Court's ability to fulfill its constitutional functions. *See Harvey*, 117 Nev. at 770, 32 P.3d at 1273. Here, the record shows that staffing shortages have led to the Municipal Court closing for one hour every judicial day and that disputes have arisen between the Municipal Court and the City with regard to the Municipal Court's use of volunteers, which the Municipal Court argues it needs to use to perform certain tasks that will otherwise be severely delayed if the Municipal Court must rely on its current employees. These issues go to the heart of the Municipal Court's ability to perform its core judicial

functions and demonstrate why the Municipal Court reasonably needs to maintain control over its employees.

The City's legislative function is to make and pass local laws and to control the power of the purse. *See generally* Sparks City Charter art. II; *see also* Sparks City Charter art. II, § 2.060(1) and (5); *State of Nevada Emps. Ass'n, Inc. v. Daines*, 108 Nev. 15, 21, 824 P.2d 276, 279 (1992); *Galloway*, 83 Nev. at 20, 422 P.2d at 242. Its executive function is to carry out and enforce those laws and to administer the affairs of the city. *See generally* Sparks City Charter art. III; *see also* Sparks City Charter art. III, § 3.020(1); *Galloway*, 83 Nev. at 20, 422 P.2d at 242. Thus, the act of managing Municipal Court employees does not itself relate to any of the City's express legislative or executive functions. Moreover, the City has not identified any reason why it would need to exert control over the Municipal Court's employees in order to fulfill its constitutional duties. In the absence of any valid basis for exercising control over these employees, the City's imposition of its influence on the Municipal Court's personnel decisions violates the separation of powers doctrine because it unconstitutionally infringes on the Municipal Court's authority to manage its employees. *See* Nev. Const. art. 3, § 1 (providing that no branch may perform the function of another branch unless expressly permitted to do so by the Nevada Constitution); Nev. Const. art. 6, § 1 (including municipal courts in the state judicial system); *see also Goldberg*, 93 Nev. at 616, 572 P.2d at 522; *Galloway*, 83 Nev. at 19, 422 P.2d at 241-42; *Mowrer*, 618 P.2d at 891.

In the underlying case, the district court enjoined the City from interfering in any way with the Municipal Court's personnel decisions, including the hiring, firing, and discipline of employees. In light

of our conclusions herein, the district court correctly found that the Municipal Court was likely to succeed on the merits of its action to prevent the City from interfering with its personnel decisions on the ground that doing so violated the Municipal Court's rights under the separation of powers doctrine. *See* Nev. Const. art. 3, § 1. Additionally, the harm from this constitutional violation is irreparable, as it would be difficult, if not impossible, to assign a monetary value to remedy the violation. *See Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (1997). We therefore affirm that portion of the district court's injunction prohibiting the City from interfering with the Municipal Court's management of its employees.[6] Additionally, because Article IX of the Sparks City Charter sets forth the civil service provisions, which authorize the hiring, supervision, and control of employees by the City, we affirm that portion of the district court's order preventing the City from applying Article IX to the Municipal Court and its employees.

*Charter provisions*

We next address the particular provisions of the Sparks City Charter that the district court found to be unconstitutional, specifically, Sections 1.080, 3.020, 3.120, 4.023, and 4.025.[7]

---

[6]To the extent that the City has purported to enter into collective bargaining agreements affecting Municipal Court employees, the issue is moot with regard to the OE3, which voluntarily withdrew its representation of Municipal Court employees. As for any agreements between the City and the SPPA, we hold that such agreements are invalid because they unconstitutionally interfere with the Municipal Court's power to manage its employees for the reasons discussed above.

[7]In their appellate briefs, the parties discuss the Sparks City Charter as it read before the most recent amendments, which took effect on July 1, 2011. As the district court entered the preliminary injunction

*continued on next page...*

Under Section 1.080 of the Sparks City Charter, the city manager has the authority to appoint "any employee employed in a bona fide executive, administrative or professional capacity," except as otherwise provided in the charter. Sparks City Charter art. I, § 1.080(3). Two sections of the charter, Section 4.023 and Section 4.025, specifically provide for the appointment of two Municipal Court positions by the Municipal Court judges. Sparks City Charter art. IV, §§ 4.023 and 4.025. And the Municipal Court judges are chosen by election. Sparks City Charter art. V, § 5.010(6) and (7). Otherwise, the charter is silent as to appointment of Municipal Court employees. Although it is unclear whether any other Municipal Court employee would fall under the definition of an "executive, administrative or professional" employee, to the extent that they do, this provision of the charter is unconstitutional insofar as it permits the City to interfere with the Municipal Court's employment decisions. *See Harvey*, 117 Nev. at 770, 32 P.3d at 1273. Thus, we affirm that portion of the injunction prohibiting application of this provision to the Municipal Court.

Next, Section 3.020 of the city charter provides that the city manager must carefully supervise the City's affairs, exercise control over all departments of the City government, attend city council meetings, and recommend adoption of measures and bills to the city council. Sparks City Charter art. III, § 3.020(1).[8] Generally, this provision directs the city

---

*...continued*
on August 31, 2011, this opinion analyzes the provisions in their current amended form.

[8]The pre-2011 amendment version of Section 3.020(1)(c) read: "The City Manager is responsible to the Council for the efficient administration
*continued on next page...*

manager to administer the affairs of the City, which largely do not appear to involve the Municipal Court. Nevertheless, the portions of this provision that allow the City to interfere with the Municipal Court's management of its operations are an impermissible infringement on the Municipal Court's inherent authority. *See Goldberg*, 93 Nev. at 616, 572 P.2d at 522. In particular, subsection (c) requires the city manager to "[e]xercise control over all departments of the City government and its officers and employees," and subsection (f)(2) directs the city manager to make investigations into any department of the City. Sparks City Charter art. III, § 3.020(1)(c) and (1)(f)(2). As these provisions permit the City to interfere with the Municipal Court's management of its operations and its employees, we affirm the district court's issuance of the injunction in this regard.[9]

Section 3.120 of the charter states that "[e]mployees in appointive positions are entitled to receive the salary designated by the City Manager within the range established for each position by the City Council." Sparks City Charter art. III, § 3.120. Additionally, Sections

---

*...continued*

of all the affairs of the City. He shall . . . [e]xercise control over all departments of the City government and its officers and employees, *except any department whose chief executive officer is not appointed by the City Manager.*" (Emphasis added.) *See* A.B. 97, 76th Leg. (Nev. 2011). Thus, prior to 2011, the Municipal Court would not have been included in Section 3.020(1)(c), as its chief executive officer, the administrative judge, is elected rather than appointed by the city manager.

[9]To the extent that sections of these provisions do not apply to the Municipal Court, they are unaffected by the district court's injunction, as the injunctive order only restricts the City from enforcing the provisions against the Municipal Court.

4.023 and 4.025 provide the city council with the authority to appropriate the money for the salaries of the Municipal Court's administrator and judicial assistant. Sparks City Charter art. IV, §§ 4.023 and 4.025. Although the City's budgeting power is implicated by these provisions, the Municipal Court's authority to manage its employees is also put at issue.

As noted above, the Municipal Court's ability to exercise direct control over its employees is necessary to ensure its survival as an independent governmental branch. *Harvey*, 117 Nev. at 770, 32 P.3d at 1273. Moreover, a court cannot effectively manage its employees if it is unable to determine the wages of those employees. *See Circuit Court of Jackson Cnty. v. Jackson Cnty.*, 776 S.W.2d 925, 927 (Mo. Ct. App. 1989) (explaining that Missouri law provides the circuit court with statutory authority to fix the salaries of its employees because, in the absence of this authority, "the legislative department could determine the extent to which the judicial department would perform its judicial function by limiting the number of employees of the Circuit Court, or providing for no employees at all"); *see also Ottawa Cnty. Controller v. Ottawa Probate Judge*, 401 N.W.2d 869, 873 (Mich. Ct. App. 1986) (concluding that the probate court had the inherent authority to set reasonable salaries for its necessary employees within the court's total budget appropriation). Thus, so long as the Municipal Court can provide for the salaries of its employees within the budget appropriated to it by the City, we conclude that it may do so consistently with its power to manage its internal affairs without interference from the other governmental branches.[10] *See Nunez*, 116

---

[10]As discussed in the next section, to the extent that the Municipal Court would need additional funding to pay wages set by it, the Municipal Court would be required to establish that such requests were reasonable

*continued on next page...*

Nev. at 540, 1 P.3d at 962. As a result, we also affirm that portion of the district court's order of injunction preventing the City from applying these charter provisions to the Municipal Court.

*Control over budget*

With regard to the budget, the district court enjoined the City from "interfering with the Municipal Court's ability to use, distribute, allocate, and make decisions regarding the budget adopted for it by the City." Neither party disputes that the City has the authority, pursuant to its legislative powers, to appropriate a budget to the Municipal Court. *See* Sparks City Charter art. II, § 2.060(5); *State of Nev. Emps. Ass'n, Inc. v. Daines*, 108 Nev. 15, 21, 824 P.2d 276, 279 (1992). Moreover, although the Municipal Court, in the communications leading up to these proceedings, asked the City to stop itemizing its budget, the Municipal Court has not argued in this appeal that the City was required to provide it with a lump sum appropriation. Even if it had raised this argument, neither the judicial function of resolving legal controversies nor the Municipal Court's power to manage its internal affairs provides it with a general power to be involved with the Sparks budgeting process. Moreover, state law requires the City to prepare a detailed budget, NRS 354.600, and it is difficult to imagine how the City could arrive at a general amount for an appropriation without considering specific categories of expenditures to be made by the Municipal Court.

That said, the Municipal Court does have certain specific powers to influence the budget appropriated to it. For instance, if the

---

*...continued*
and necessary to allow it to carry out its constitutional functions. *See Young v. Bd. of Cnty. Comm'rs*, 91 Nev. 52, 56, 530 P.2d 1203, 1206 (1975).

Municipal Court needs funds for particular items or expenses, it can compel such funding on a showing that the requests are "reasonable and necessary to carry out [its] powers and duties in the administration of justice." *Young v. Bd. of Cnty. Comm'rs*, 91 Nev. 52, 56, 530 P.2d 1203, 1206 (1975). Moreover, once the Municipal Court's general budget is appropriated to it by the City, the Municipal Court possesses the power to make independent financial decisions as to how to allocate the funds within that budget pursuant to its inherent authority to manage its internal affairs.[11] *See Nunez*, 116 Nev. at 540, 1 P.3d at 962.

While we recognize these general principles, we note that the parties have failed to develop the record or define the scope of the question presented by the budget issue in this case. For instance, the record is devoid of evidence as to how the City determines the Municipal Court's budget, how the budget is implemented and distributed, whether the Municipal Court has attempted to use money appropriated to it in a manner that varied from the City's itemization, or whether the City has prevented the Municipal Court from making independent internal budget decisions. In particular, there is no evidence that the City has required the Municipal Court to administer its budget in any specific manner. Instead, the record demonstrates only that the conflict in this case arose in response to the City's request that the Municipal Court reduce the salaries of two of its employees. As the parties have not identified any other actual

---

[11]We note that if the City makes a specific appropriation to the Municipal Court apart from the general budget, such an appropriation must be used for its designated purpose, so long as doing so does not interfere with the Municipal Court's ability to carry out its constitutional functions. *See Galloway v. Truesdell*, 83 Nev. 13, 21-22, 422 P.2d 237, 243 (1967).

conflict with regard to the budget, this requested reduction is the only budget issue that is properly before this court. *See Personhood Nev. v. Bristol*, 126 Nev. ___, ___, 245 P.3d 572, 574 (2010) (explaining that "[t]his court's duty is not to render advisory opinions but, rather, to resolve actual controversies by an enforceable judgment").

Even as to this issue, however, the parties have not sufficiently developed the record to demonstrate whether an actual controversy exists in this regard. Based on the timing of the request, it appears likely that it was made in the context of the City's preparation of its annual budget, *see* NRS 354.596(2) (requiring a city's tentative budget under the Local Government Budget and Finance Act to be submitted annually by April 15); NRS 354.598 (requiring a city's final budget under the Local Government Budget and Finance Act to be approved annually by June 8), but the parties have not explained the circumstances surrounding the requested budget reduction. Moreover, the Municipal Court initially asserted that it had instructed its employees not to execute any documents to effectuate a salary reduction, but later stated that it had complied with the City's budget request. Nothing in the record demonstrates that the Municipal Court sought to reduce its budget by means other than through the salary reduction or that the City refused to allow the Municipal Court to do so.[12] Without this information, it is impossible to determine whether

---

[12]At oral argument before this court, the Municipal Court represented that it had sought to reduce the budget other than by reducing the identified salaries and had been precluded from doing so by the City. The City denied that the situation had occurred as described by the Municipal Court, asserting that as long as the budget was reduced, the manner of reducing it was irrelevant. This court asked the Municipal Court to supplement the briefing to identify any specific record evidence

*continued on next page...*

the City impermissibly interfered with the Municipal Court's inherent authority to manage its internal affairs by administering its budget in the manner it saw fit. Therefore, we conclude that the district court's issuance of the preliminary injunction on budget issues was overbroad and premature. Accordingly, we reverse that portion of the injunction prohibiting the City from interfering with the Municipal Court's budget and remand this matter to the district court for further proceedings consistent with this opinion.

On remand, the district court must initially consider whether any actual controversy is presented with regard to the budget, given that the Municipal Court apparently complied with the requested budget reductions and there is no indication in the record as to the manner of compliance or the City's response to the Municipal Court's proposed method of compliance. *See Personhood Nev.*, 126 Nev. at ___, 245 P.3d at 574. If the case does present an actual controversy, the district court should then decide whether any action the Municipal Court seeks to take would be a permissible exercise of the Municipal Court's ability to manage its internal affairs, *see Nunez*, 116 Nev. at 540, 1 P.3d at 962, or would be an assertion of inherent power that would overlap with the City's legislative power over the budget. *See Galloway*, 83 Nev. at 21-22, 422 P.2d at 243. Finally, if the district court determines that the Municipal Court's proposed action does not fall under the management of its internal

---

*...continued*
supporting its claim that the City had refused to allow it to proceed with a budget reduction as proposed by the Municipal Court. Although the Municipal Court filed the requested supplement, it failed to point to any record evidence demonstrating that it had made, or the City had denied, any such request.

affairs, the district court must evaluate whether the Municipal Court's intended action is reasonable and necessary to allow it to carry out its constitutional duty to administer justice. *See Young*, 91 Nev. at 56, 530 P.2d at 1206; *see also Halverson*, 123 Nev. at 263, 163 P.3d at 441.

*Special counsel*

Finally, the district court enjoined the City from applying NRS 41.0344 or Section 3.055 of the Sparks City Charter to this case. The district court did not issue any further ruling with regard to the Municipal Court's ability to retain counsel or compel payment of counsel generally.

Section 3.055 of the Sparks City Charter provides that the city council may "employ attorneys to perform any civil or criminal duty of the City Attorney." Sparks City Charter art. III, § 3.055. This provision further states that counsel retained pursuant to this provision is responsible only to the city council. *Id.* NRS 41.0344 permits a political subdivision's attorney to employ special counsel if he or she determines that it could constitute a conflict of interest for the legal services to be rendered by that attorney. Based on the language of these provisions, we conclude that they are not applicable to this case, as counsel in this situation was retained by the Municipal Court, rather than by the city attorney, and, as the representative of the Municipal Court, counsel was responsible to the Municipal Court and not to the city council. Thus, we affirm the district court's order to the extent that it found that these provisions were inapplicable. Moreover, the City agreed that the Municipal Court needed to hire independent counsel, and we conclude that, pursuant to its inherent power to protect its ability to perform its constitutional functions, the Municipal Court had the right to hire the

counsel of its choosing, without interference from the City. *See Nunez*, 116 Nev. at 540, 1 P.3d at 962.

As the district court did not take any further action in regard to the special counsel issue, we decline to issue any additional ruling in this regard. We note, however, that to the extent that the Municipal Court seeks any appropriation to pay special counsel's fees, the City, pursuant to its legislative budgetary authority, may review the reasonableness of counsel's hourly rate when determining whether to make such an appropriation, but may not make a more specific review of the cost of the representation, as permitting the City to review and question the reasonableness of particular expenditures connected with the instant action would impermissibly infringe on the attorney-client relationship and the Municipal Court's right to seek legal advice and to make decisions regarding its legal strategy.

## CONCLUSION

In light of the foregoing, as to the Municipal Court's administrator, administrative assistant, marshals, court clerk/interpreters, court clerks I and II, and volunteers, we affirm the portions of the district court's order prohibiting the City from interfering with the Municipal Court's management of its employees, enforcing or entering into collective bargaining agreements on behalf of Municipal Court employees, and applying Sparks City Charter art. I, § 1.080; art. III, §§ 3.020, 3.120; art. IV, §§ 4.023 and 4.025; and art. IX to the Municipal Court and its employees. We reverse, however, that portion of the district court's order preventing the City from taking certain actions with regard to the Municipal Court's budget, and we remand the matter to the district court for further proceedings. Finally, we affirm that portion of the

district court's order permitting the Municipal Court to retain and pay special counsel.

_____, J.
Hardesty

We concur:

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

PICKERING, C.J., concurring in part and dissenting in part:

I respectfully disagree with the majority's decision to the extent that it invalidates the Sparks City Charter provisions that apply to court employees besides the court administrator and judicial assistants. In my view, the holding with respect to civil service and union employees is inconsistent with the express terms of the Nevada Constitution, Article 15, Section 11, and the Sparks City Charter, which the Legislature and the City of Sparks adopted according to the political process specified in the Nevada Constitution, Article 8, Section 8. That process, and these charter provisions, induced reliance interests on the part of those involved that I would not disturb, particularly not on the inadequate record thus far presented in this case.

The Sparks City Charter vests the power to hire, fire, and discipline the court administrator and judicial assistants in the Municipal Court's Administrative Judge, not the City Council. *See* Sparks City Charter art. IV, §§ 4.023 and 4.025. *But it makes no similar provision for other employees providing service to the Sparks Municipal Court. Id.* Sections 4.023 and 4.025 recognize, *legislatively*, that employees who occupy the positions of court administrator or judicial assistant "perform[ ] vital and essential court functions," and so answer to the Municipal Court directly, not the City. *State ex rel. Harvey v. Second Judicial Dist. Court*, 117 Nev. 754, 770, 32 P.3d 1263, 1273 (2001) (court clerk); *AFSCME v. Wayne Cnty.*, 811 N.W.2d 4, 20-21 (Mich. Ct. App. 2011) (court clerk); *Barland v. Eau Claire Cnty.*, 575 N.W.2d 691, 702-03 (Wis. 1998) (judicial assistant). Notably, the Sparks City Charter does *not* extend this status to other personnel who provide services to the Municipal Court. Rather, such other personnel are governed by the Sparks Civil Service

Commission and the regulations promulgated pursuant to the Charter. *See* Sparks City Charter art. IX, § 9.020(1) and (2).

The inherent-powers doctrine allows the judicial branch "to administrate its own procedures and to manage its own affairs . . . when *reasonable and necessary* for the administration of justice." *Halverson v. Hardcastle*, 123 Nev. 245, 261, 163 P.3d 428, 440 (2007) (internal quotation omitted).[1] But "such inherent powers must be exercised with discernment and circumspection." *Angell v. Eighth Judicial Dist. Court*, 108 Nev. 923, 926, 839 P.2d 1329, 1331 (1992). Proper respect for coordinate branches of government limits resort to inherent judicial powers to situations in which the judicial branch has exhausted other executive and legislative avenues available and the need is such that the "efficient administration of justice [will be] destroyed or seriously impaired" if left unfulfilled. *Bd. of Cnty. Comm'rs v. Devine*, 72 Nev. 57, 60, 294 P.2d 366, 367 (1956). Put another way, "inherent [judicial] power should be exercised only when established methods fail or in an emergency situation[, and] ceases when the court's ability to carry out its constitutional duty to ensure the administration of justice no longer is in jeopardy." *Halverson*, 123 Nev. at 263, 163 P.3d at 441 (footnotes omitted). Also, "because inherent power arises from the constitution's operation, constitutional clauses may remove or modify that power" from the purview of the judiciary. *Id.*

---

[1]Although legislatively, as opposed to constitutionally, created, Nev. Const. art. 6, § 1, municipal courts possess the same inherent powers as constitutionally created courts do. *City of N. Las Vegas v. Daines*, 92 Nev. 292, 295, 550 P.2d 399, 400 (1976).

SUPREME COURT
OF
NEVADA

(O) 1947A

2

I respectfully submit that, under the Nevada Constitution, the Sparks City Charter provisions control. Exercising its constitutional prerogative, the Legislature approved the Sparks City Charter. Nevada Const. art. 8, § 8. Another section of the Nevada Constitution specifies that, when a municipality (Sparks) has a "legally adopted charter" (the Sparks City Charter), the charter controls the city's employment relationships, certainly as to tenure and dismissal: "In the case of any officer or employee of any municipality governed under a legally adopted charter, the provisions of such charter with reference to the tenure of office or the dismissal from office of any such officer or employee shall control." Nev. Const. art. 15, § 11. Since the Sparks City Charter divides authority over Municipal Court employees between the Municipal Court (court administrator and judicial assistants) and the Civil Service Commission (all others), *constitutionally*, those provisions "*shall* control." *Id.* (emphasis added). Thus, under *Halverson*, it appears that the inherent-judicial-power doctrine should not apply because another, more specific constitutional provision displaces it.

The majority argues that Article 15, Section 11 uses "officer" and "employee" to mean the same thing, such that the provision only applies to elected or appointed officials, not employees generally. But this gives the word "employee" a singular meaning unique to Article 15, Section 11. Elsewhere, the Nevada Constitution distinguishes between "officers" and "employees." *Compare, e.g.*, Nev. Const. art. 15, § 10 ("All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law.") *with* Nev. Const. art. 15, § 15 ("The legislature shall provide by law for a state merit system governing the employment of employees in the executive branch of state

government."). Basic rules of statutory and constitutional interpretation teach that "[a] word or phrase is presumed to bear the same meaning throughout a text," and that

> [i]f possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170, 174 (2012) (footnote omitted) (Canons 25 and 26). Given these basic rules, I disagree that "officer" and "employee" mean the same thing—"officer"—in the Nevada Constitution, Article 15, Section 11, even though they are not used in that sense anywhere else in Article 15 or the Nevada Constitution as a whole.

Nor does the legislative history support the majority's conclusion that Article 15, Section 11 has no application to Sparks civil service employees doing work for the Municipal Court.

As the majority notes, the voters amended the Nevada Constitution in 1946 to add the italicized language to Article 15, Section 11 shown below:

> The tenure of any office not herein provided for may be declared by law, or, when not so declared, such office shall be held during the pleasure of the authority making the appointment, but the Legislature shall not create any office the tenure of which shall be longer than four (4) years, except as herein otherwise provided in this Constitution. *In the case of any officer or employee of any municipality governed under a legally adopted charter, the provisions of such charter with reference to the tenure of office or the dismissal*

*from office of any such officer or employee shall control.*

Nev. Const. art. 15, § 11. The majority reasons that, because the first sentence refers to "office[s]," the second sentence should be taken to apply only to "officers," not civil service employees, when it refers to "any officer *or employee* of any municipality." As support, it cites an editorial that appeared in the Nevada State Journal on November 2, 1946. But the Nevada State Journal editorial on which the majority relies says the exact opposite. It notes that, as originally adopted, Article 15, Section 11 "provide[d] that the legislature cannot create any office the tenure of which shall be longer than four years," and reasons that, "[s]ince the state constitution governs, a city cannot create an office the tenure of which [is] longer than four years." Editorial, *Question No. 1*, Nevada State Journal, November 2, 1946, at 4. According to the 1946 editorial writer, this created problems for *municipal civil service employees* that the amendment was designed to fix:

> *Employees of cities, holding civil service status, are considered holding office* and consequently it is contended their tenure of office would be limited to four years by strict application of the constitution. *Civil service is designed to protect employees and make permanent their tenure of office.*
>
> The proposed amendment adds the following sentence to Section 11 of Article 15 of the constitution:
>
> "In the case of any officer or employee of any municipality governed under a legally adopted charter, the provisions of such charter with reference to the tenure of office or the dismissal from office of any such officer or employee shall control."

> *The amendment simply broadens the field for municipal charters* and in no other way directs the legislature to change the four-year provision of the constitution with respect to state officers.
>
> *. . .[Its purpose is] to remove ambiguities from the law which might cause unexpected trouble.*

*Id.* (emphasis added). Thus, according to the source relied on by the majority, the final sentence of Article 15, Section 11 was added to ensure that, when it comes to municipal civil service employees, if the city has a "legally adopted" charter, that charter controls their "tenure or . . . dismissal." This makes inexplicable the majority's decision to invalidate the Sparks City Charter civil service provisions that, by their express terms, apply to all city employees except the Municipal Court's court administrator and judicial assistants, authority over whom is vested in the Municipal Court.

The majority's recitation of the history of this dispute demonstrates that the parties' first instinct was correct. Thus, they originally looked to the political process of amending the Sparks City Charter to clarify the status of the employees besides the court administrator and judicial assistants who provide service to the Municipal Court. But they abandoned that avenue and turned to the courts for relief instead. By means of this shortcut, the tenure and dismissal of municipal employees whose employment, previously, was controlled by the Sparks City Charter civil service provisions is now controlled by the Municipal Court. Basic rules of construction do not permit express constitutional terms to be overridden that easily by concepts of implicit or inherent, but unwritten, authority.

I also note that, even if the Municipal Court could overcome Article 15, Section 11, the record assembled does not, in my estimation, make the threshold showings of impasse and need required for the judicial branch to exert its inherent authority against another, coordinate branch. Thus, while impasse and need are *argued*, the evidence does not establish such basic information as the positions involved, the services the affected employees provide, the impact the City Charter provisions have on their performance, or the threat having the City Charter provisions apply to them poses to the administration of justice in the Sparks Municipal Court. Only a few examples are given, one dating back to 2002; the others do not establish "the destruction or serious impairment of the administration of justice" and the failure of other alternatives that our case law requires. *Devine*, 72 Nev. at 60-61, 294 P.2d at 367-68 (reversing mandamus requiring the county to appoint a bailiff; although "the court or the judge has inherent power to secure an attendant for his court, at public expense, if the regular, orderly, statutory methods fail, or if the officials charged by the legislature arbitrarily or capriciously fail or neglect to provide the necessary attendant, whereby the efficient administration of justice is destroyed, or seriously impaired," the record did not adequately establish impasse or need).

For these reasons, I would vacate the preliminary injunction issued by the district court, insofar as it applies to Municipal Court employees other than the court administrator and judicial assistants. As to the court administrator and judicial assistants, I agree with the

majority's reversal and remand. I therefore, respectfully, concur in part and dissent in part.

_____, C.J.
Pickering